28 C.C.P.A. (Patents)

**MARTELL & CO. v. SOCIETE ANONYME DE LA BENEDICTINE, DISTILLERIE DE LA LIQUEUR DE L'ANCIENNE ABBAYE DE FECAMP.**

**SOCIETE ANONYME DE LA BENEDICTINE, DISTILLERIE DE LA LIQUEUR DE L'ANCIENNE ABBAYE DE FECAMP v. MARTELL & CO.**

Patent Appeals Nos. 4390, 4391.

Court of Customs and Patent Appeals.

Jan. 6, 1941.

Maurice J. Moore, of New York City, for appellant.

Asher Blum, of New York City (Hugo Mock, of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

The Benedictine Company, so referred to for convenience, organized under the laws of the Republic of France and doing business in France and in the United States, filed in the United States Patent Office its application for registration of a trade-mark as applied to an alcoholic beverage made by the applicant and which con-

sists of equal parts of Benedictine and cognac brandy.

The mark which had been registered in France, and which is here sought to be registered, is in the following form:

The mark was duly examined and allowed and due publication made thereof. Thereafter a notice of opposition to the registration of the said mark was filed by Martell & Co., a firm domiciled in Cognac, France, and there engaged in the business of producing, packing and shipping cognac brandy.

The applicant is the owner of the trademark "Benedictine" as applied to a liqueur manufactured solely by applicant.

The opposition is directed to the registration of the trade-mark because of the notation "B and B" appearing thereon.

In the notice of opposition it is alleged that the Martell Company has continuously engaged in its business for over one hundred years; that its brandy has been imported into and widely distributed throughout the United States for upwards of fifty years, except during the period of prohibition; that the brandy has acquired a wide and favorable reputation in this country and has been extensively used as a component part of a beverage known as "B and B" (Benedictine and brandy) ; that the term "B and B", by reason of its long use, has become generic and belongs to the public domain and that it is descriptive of the beverage itself.

The Martell Company sets out its alleged injury as follows:

"6. That the Opposer is particularly injured and damaged by any claim of the Applicant to the exclusive use of the term B and B for liqueurs and cognac because the Opposer is engaged in the business of supplying cognac brandy for alcoholic beverages, which cognac brandy, as well as brandy of other manufacturers, is used in the making of B and B, and the granting of any registration to the applicant gives an apparent sanction to the claim of the applicant to the exclusive use of the name B and B as applied to liqueurs and cognac; and such apparent sanction by the United States Patent Office would mislead customers of Opposer in the belief that no one but the applicant has the right to use B and B as applied to liqueurs and cognac; and that sellers of beverages for immediate consumption by consumers would refrain from purchasing Opposer's brandy for the purpose of making the beverage known as B and B. That such discrimination would be most injurious and damaging to the opposer. That such registration would give to applicant statutory and prima facie trade mark rights to which it is not entitled.

"7. The Opposer alleges that applicant well knows that B and B as applied to liqueurs has been in general and extensive use for many years prior to May 16, 1936, in the United States of America as indicating a beverage composed partly of brandy and that no one has any right to exclusively appropriate B and B as applied to liqueurs and cognac in the United States of America, and has been fully aware of the general and extensive use of the descriptive term and name 'B and B'.

"8. That on information and belief applicant seeks to obtain registration in the United States Patent Office for the main purpose of obtaining the sanction of the Patent Office to the registration applied for in order to enable the applicant to obtain an exclusive sale of the brandy in the beverage long known as 'B and B'."

The Benedictine Company, in its answer to the allegations contained in the notice of opposition, admitted that the term "B and B" is widely and extensively used to designate an alcoholic beverage composed of equal parts of genuine Benedictine and brandy. It alleges that the Martell Company has no rights in the mark "B and B"

itself; denies that opposer would be in any way injured by the registration and alleges that it has the exclusive right to manufacture and sell the beverage known as Benedictine "B and B" by reason of its ownership of the trade-mark "Benedictine". It further alleges that it has the sole and exclusive right to employ the designation "B and B" or Benedictine "B and B" for the reason that it has the sole and exclusive right to furnish one of the ingredients of the beverage, namely, Benedictine. It also denies that opposer has any such interest in the mark "B and B" as to entitle it to file a notice of opposition herein.

It will be observed that the Martell Company sought to draw in the "descriptiveness" clause of section 5 of the Trade-Mark Act of February 20, 1905, as amended, 15 U.S.C.A. § 85, as the statutory ground for denying the right of registration (section 7 of the said act, 15 U.S.C.A. § 87) claimed by the applicant.

Neither party took testimony and the issue was presented to the Examiner of Interferences upon an agreed statement of facts as follows:

"1. That the trade mark Benedictine is a good and valid trade mark, the property of the applicant, Societe Anonyme de la Benedictine, etc., and that it has been used for an alcoholic liqueur abroad since the year 1865 and in the United States since approximately the year 1870.

"2. That the opposer, Martell & Co., is a firm having its principal office at Cognac, France, and that including its predecessors in title has been continuously engaged in the manufacture and sale of cognac brandy for over one hundred years, and for more than eighty years has sold cognac brandy in the United States under the brand name of Martell.

"3. That the applicant, Societe Anonyme de la Benedictine, etc., has used the trade mark herein applied for, including the letters 'B and B' on a bottled alcoholic liqueur in the United States since May 16th, 1936, but not prior to that date.

"4. That the term 'B and B' as the name for an alcoholic beverage has been popularly and exclusively known in the United States for approximately thirty years to designate a mixture of the liqueur Benedictine of Societe Anonyme de la Benedictine, etc.—50%, and cognac brandy 50%. That until the marketing of the article known as 'B and B' and identified by the label of the applicant, Societe Anonyme de la Benedic-

tine, etc., there has not been sold in the United States or elsewhere any bottled beverage labelled 'B and B', but that the term 'B and B' used to indicate the 'B and B' alcoholic beverage was used in commerce only orally to designate a beverage composed of 50% of Benedictine and 50% of cognac brandy.

"5. That said term 'B and B' to designate such a mixture of Benedictine and cognac brandy has been used orally at alcoholic beverage bars in the United States, England and France, for approximately thirty years, and that upon a request by a customer of such beverage bars, the attendant at such beverage bars was expected to and actually did fill such order with 50% of Benedictine and 50% of a brandy or cognac brandy designated by the particular attendant or by the particular bar at which the beverage was ordered, except when the consumer designated the specific brand of Cognac which he desired. That consumers in some instances did and still do designate Martell Brandy in their orders for 'B and B'.

"6. That in a large proportion of such verbal orders for the alcoholic beverage known as 'B and B', such order was filled by supplying a beverage composed of 50% of Benedictine and 50% of Martell cognac brandy, the product of the opposer herein, and that the sales of Martell brandy used in the dispensing of the alcoholic beverage known as 'B and B' have been substantial.

"7. That the words 'B and B' as used for an alcoholic beverage in the United States have acquired a secondary meaning as in all cases indicating a beverage composed of 50% Benedictine and 50% of brandy the choice of the brandy being optional with the bar dispensing the beverage, except in instances where the consumer designates the make of brandy.

"8. That applicant is selling and intends to continue to sell in the United States the liqueur known as Benedictine.

"9. Either party to this opposition shall at final hearing be entitled to use any certificates of registration of the applicant or of the opposer now on record in the United States Patent Office."

Upon this record the Examiner of Interferences dismissed the notice of opposition and adjudged the Benedictine Company to be entitled to the registration for which it made application. While the examiner stated that the notation "B and B" seems to be the dominant feature of the

mark, he reasoned that even though the Benedictine Company admitted that "B and B" signifies Benedictine and brandy, that prior to the adoption of the mark in issue the said beverage of Benedictine and brandy had not been sold as a unitary bottled product, but was obtainable only upon the verbal order of those who desired the beverage, such orders being filled with Benedictine and an appropriate brandy, in many cases the brandy of the Martell Company.

With regard to the claimed descriptiveness of the mark, the examiner stated in his decision that: "* * * unless a registration issued upon the application under consideration could be utilized as prima facie evidence of the lack of right of the opposer or persons in privity therewith to use the term 'B and B' merely for purposes of description, it is believed that 'damage' within the meaning of Section 6 [15 U.S. C.A. § 86] may not be properly here inferred."

The examiner further stated that because the Benedictine Company is the sole source of Benedictine liqueur an expression such as "Benedictine and brandy," "Benedictine and lemon," or the equivalent thereof for corresponding bottled mixed drinks would necessarily indicate that such product originated with the maker of the liqueur. He also reasoned that since the notation "B and B" does not designate Martell & Co.'s goods or any other brandy, that the purchaser who desired a beverage consisting of Benedictine and a particular brandy would be compelled to name the brandy entering into the mixture. The examiner stated that "This situation is not changed by the sale of the merchandise for which applicant seeks registration or the use of the mark in issue thereon."

With respect to the claim of injury to Martell & Co. that the registration of the mark might be used for the purpose of preventing the sale of its goods upon an order therefor as an ingredient of the beverage consisting of Benedictine and brandy, the examiner held that mere possibility of injury is deemed not to be proper ground for refusing registration.

Upon appeal the Commissioner of Patents affirmed the decision of the Examiner of Interferences with respect to dismissing the notice of opposition, and in the absence of an appropriate disclaimer of the notation "B and B" reversed the said decision with respect to the holding that the Benedictine Company is entitled to the registration of its mark for the reason that the mark is descriptive of the goods. Both parties appealed to this court from the decision of the commissioner. The Benedictine Company appealed from the said reversal and the Martell Company appealed from the said affirmance.

It is clear from the record that any purchaser who so desires, even with the applicant's bottled "B and B" on the market, can still specify the use of Martell brandy with Benedictine if he prefers that brand of cognac, and there is nothing in the trade-mark law which can prevent the sale by the Benedictine Company of "B and B" in bottles.

Since it is admitted that the notation "B and B" is a designation of Benedictine and brandy in equal parts and that the designation has been popularly and exclusively so used in the United States for approximately thirty years, we think that the term is necessarily descriptive of the said goods, within the meaning of section 5 of the Trade-Mark Act and the fact that the mark contains additional letters of an apparently arbitrary nature does not change the situation.

It is to be observed that the notation "B and B" stands out so boldly in the relatively faintly hatched letters "D O M" that the latter seem insignificant and they would attract little, if any, visual attention. "B and B" is the very essence of the mark and without this notation it is obvious that the Benedictine Company would not have sought the registration for which it made application. In our opinion the registration of the mark as applied for would, in effect, be equivalent to registration of the term "B and B" by itself.

Upon the agreed statement of facts there appears to be a probability that the Martell Company would be damaged by the registration of the mark. Therefore, the decision of the commissioner with respect to the dismissal of the opposition is reversed, and the decision with respect to refusing the registration is affirmed.