31 C.C.P.A.(Patents)

**OTARD, Inc., v. ITALIAN SWISS COLONY, and eleven other cases.**

Patent Appeals Nos. 4837–4848.

Court of Customs and Patent Appeals.

March 6, 1944.

Asher Blum, of New York City (Hugo Mock, of New York City, of counsel), for Otard, Inc.

Maurice J. Moore, of New York City, for Schieffelin & Co.

Edmund H. Parry, Jr., of Washington, D.C. (Parry & Miller, of Washington, D. C., of counsel) for Canada Dry Ginger Ale, Inc., Julius Wile Sons & Co., Inc., F–C–G Importers, Inc., and Park & Tilford Import Corporation.

Jackson & Webster, of San Francisco, Cal. (Chas. R. Allen, and William H.

Mackay, both of Washington, D. C., of counsel), for Italian Swiss Colony.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

Each case above listed presents an appeal from the decision of the Commissioner of Patents (speaking through an assistant commissioner) in a trade-mark opposition proceeding. By reason of the similarity of the issues involved all the cases are covered by a consolidated record. The cases were briefed and argued together, three briefs being filed on behalf of different of the appellants and one on behalf of appellee. The appellee in each case is the Italian Swiss Colony, a corporation of the State of California.

Two applications, serial Nos. 434,212 and 434,213, were filed in the Patent Office by appellee on July 22, 1940, for the registration of trade-marks for brandy. In serial No. 434,212 the mark consists of the notation "Calognac" and in serial No. 434,213 it consists of the notation "Colognac." Both are coined words, having no dictionary definitions.

It is conceded that appellee, so far, has applied the respective marks only to brandy produced from grapes grown in California, but there is nothing in the applications which limits their use to such brandies. So far as the applications are concerned the marks could be applied to brandies made anywhere from anything.

All the appellants above listed filed separate notices of opposition to both applications, so that twelve cases were before the tribunals of the Patent Office and are now before us. The grounds of opposition, however, are substantially the same in all the cases.

It appears that the several appellants are importers and distributors in the United States of a brandy known by the name of "Cognac", which is produced from grapes grown in a limited territorial region of France, sometimes referred to as the "Cognac region," the town or city of Cognac being located therein. It is not claimed by appellants that the term "Cognac" is a technical trade-mark, although the word is included in certain registrations named in, and filed with, the notices of opposition. The contentions respecting it are stated later in this decision.

The Examiner of Trade-Mark Interferences in separate decisions dismissed each of the twelve oppositions on the ground that the opposers could not qualify "under any of the descriptiveness clauses, geographical or otherwise, of Section 5" of the Trade-Mark Act of 1905, 15 U.S.C.A. § 85, and further held the notations of appellee to be registrable as valid technical trademarks.

All the opposers took separate appeals to the commissioner. He held, in effect, that, upon the facts appearing, the name "Cognac" is both descriptive and geographical (a matter admitted by the opposers, although it is claimed to be more than merely descriptive or merely geographical) but that the use, both descriptive and geographical, made of the term in the business of opposers gave them the right to file the oppositions (citing the cases of Burmel Handkerchief Corp. v. Cluett, Peabody & Co., Inc., 127 F.2d 318, 29 C. C.P.A., Patents, 1024, and Trustees for Arch Preserver Shoe Patents v. James McCreery & Co., 49 F.2d 1068, 18 C.C.P.A., Patents, 1507), but said (we quote from his decision in appeal 4837) inter alia:

"It seems to me the only question requiring determination is whether it appears reasonably likely that people seeing the name 'Calognac' on brandy will believe the brandy to be cognac; in other words whether 'Calognac' will be reasonably likely to impress purchasers and the public as merely a corruption or a mere misspelling of the word 'cognac' and to mean nothing else but cognac either descriptively or geographically or both; for instance as in the case of American Druggists Syndicate v. United States Industrial Alcohol Co., 55 App.D.C. 140, 2 F.2d 942, 332 O.G. 5, which involved the words 'Al-Kol' and 'Alcohol'.

"If the mark 'Calognac' applied to brandy would not be likely to lead purchasers and the public to believe the brandy actually was cognac opposer would not be likely to be damaged by registration of the mark and the opposition would fail for that reason."

Accordingly, after further discussion hereinafter alluded to, he, in effect, affirmed the decisions of the Examiner of Trade-Mark Interferences dismissing the several oppositions, and also affirmed the latter's holding that appellee is entitled to the registrations sought.

The several appeals to this court followed.

It may be said here that testimony was taken on behalf of Otard, Inc., in connection with which various documentary exhibits were introduced, and that it was stipulated that all the evidence so adduced, so far as pertinent, might be used in all the cases. Appellee took no testimony but did give notice under Patent Office rule 154 (e), 35 U.S.C.A.Appendix, that at final hearing it would rely upon certain cited registrations, owned by it, as evidence.

Since the grounds of opposition relied upon by all the opposers are, in substance, the same, and since the decisions appealed from are practically identical in all the cases, and the reasons of appeal the same in meaning, we think it will conduce to clearness in our decisions to confine our principal discussion to a single case, and, for this purpose, we take the first on the list—that of Otard, Inc., v. Italian Swiss Colony, appeal No. 4837, opposition No. 20,337, in which the involved notation of appellee is "Calognac."

### Otard, Inc., v. Italian Swiss Colony
### Patent Appeal No. 4837

We deem it unnecessary to review the evidence in detail or at length. It was established that Cognac is a name applied to a type of brandy distilled from wines made from grapes grown in a limited territorial region of France, often referred to as the Cognac district, the boundaries of which are defined by French law. It was further established by testimony, to which no objection was made, that under French law the term may not be applied in France to any type of brandy (whether domestically dealt in or exported) produced outside the region so defined.

As we understand from the evidence, there is a certain quality in the soil of the region which gives to the grapes there grown a particular character or flavor, which enters into the brandy made from them, and that that quality of soil is not found elsewhere in France, nor, it is claimed, in any other part of the world. It is recognized as a superior brandy; has been so recognized for several hundred years, and it long has been the policy of the French Government to protect its reputation and name. It appears from the following that such also has been the policy of the United States Treasury Department:

Appellant's Exhibit No. 3 is an official document, "Regulations No. 5" (as amended from time to time) of the Federal Alcohol Administration of the United States Treasury Department (now being administered in a division of the Alcohol Tax Unit) relating to the labeling and advertising of distilled spirits, the regulations being issued under the provisions of the Federal Alcohol Administration Act of August 29, 1935, 27 U.S.C. § 201 et seq., 27 U.S.C.A. § 201 et seq.

Under the heading of "Article II, Standards of Identity for Distilled Spirits," in the class of brandies, the document states:

"(d) 'Cognac' or 'Cognac brandy' is grape brandy distilled in the Cognac Region of France, which is entitled to be designated as 'Cognac' by the laws and regulations of the French Government; and includes mixtures of such brandy."

Another paragraph of the regulations— (b)(2) on page 25 of the document—relates to labels of imported distilled spirits, including Cognac, covered by certificates of origin or age issued by a duly authorized official of the appropriate foreign government, and provides, in the case of Cognac, that the reference on the label to such certificate shall read substantially: "This product accompanied at the time of importation by an 'Acquit Regional Jaune d'Or' issued by the French Government, indicating that this grape brandy was distilled in the Cognac Region of France."

In Article IV, section 46, pages 28–29 of the document, is a provision reading:

"Cognac in bottles, imported on or after August 15, 1936, shall not be released from customs custody unless the invoice is accompanied by a certificate issued by a duly authorized official of the appropriate foreign government, certifying that the product is grape brandy distilled in the Cognac region of France and entitled to be designated as 'Cognac' by the laws and regulations of the French Government."

As Exhibit No. 5 opposer introduced a statement from the Federal Register of August 2, 1938, the purport of which is that after a public hearing and due consideration the Secretary of the Treasury disapproved a proposal to amend the regulations—"* * * in such manner as to permit brandies produced in the United States which have the taste, aroma and general characteristics of Cognac, as produced in the Cognac region of France, to be designated as 'Cognac' if, in direct conjunction with such designation, there appears conspicuously the name of the state

or other locality in the United States in which the brandy was produced."

No reference was made in the decision of the commissioner to the matters above quoted, respectively, from the Federal regulations and the Federal Register, nor to the testimony of a witness concerning them, nor do they appear to be specifically referred to in the reasons of appeal. Opposer urges, however, that they have a relevancy to the alleged secondary meaning, or special significance, claimed for the name Cognac, and to the alleged deceptiveness of appellee's marks as applied to a domestic brandy.

The case appears to be sui generis. While numerous authorities have been cited and discussed in the different briefs, it is conceded that no decision in a case on all fours with it has been found.

The peculiarity of the case grows out of the fact that "Cognac" is not claimed to be a technical trade-mark used as such, or subject to exclusive ownership. Appellee would have the right to use it in the same manner that appellant uses it—that is upon brandy imported from the Cognac region of France, but there is no claim on the part of appellee that it would be entitled to use it on domestically produced brandies or on any brandies other than that coming from the described region. It is, in fact, a substantive name which for hundreds of years has meant brandy of a particular type.

As we interpret the decision of the Examiner of Trade-Mark Interferences upon the question of the right of appellant to oppose, he limited his consideration to section 5 of the Trade-Mark Act of 1905, specifically, we assume, to the provision reading, "Provided, That trademarks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties, or which so nearly resemble a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers shall not be registered," and, because appellant does not and cannot claim Cognac as a trade-mark, held that it has no right to oppose, and dismissed the notice of opposition for that reason.

As has been indicated, the commissioner disagreed with that holding of the Ex-

aminer of Trade-Mark Interferences and expressed the view that appellant had the right to file the notice of opposition, but he, in effect, dismissed it on the ground that appellant would not be likely to be injured because "no confusion or deception of purchasers appears likely to result from the use by applicant of the mark 'Calognac' on brandy, domestic or otherwise."

While it is not altogether clear, we interpret parts of appellee's brief as being intended to support the position of the Examiner of Trade-Mark Interferences on that phase of the controversy. Appellee has not dwelt upon this at great length, however, because it contends that in any event the decision of the commissioner, as to lack of probable injury, is sound and should be sustained.

The opposition of appellant, of course, was instituted under section 6 of the Trade-Mark Act of 1905, Title 15 U.S.C. § 86, 15 U.S.C.A. § 86, providing that any person who believes he would be damaged by the registration of a mark applied for may oppose the same by filing notice of opposition, stating the grounds therefor, and, in essence, the ground stated by appellant is that it would suffer damage by reason of the confusion which it is alleged would probably result from the registration and use of "Calognac" because of its resemblance to the name "Cognac."

It is contended, in substance, on behalf of appellant that Cognac as a name has attained a world-wide secondary meaning as solely indicating a brandy produced in or emanating from the Cognac District of France; that brandies distilled elsewhere are not legally entitled to be designated as Cognac; that the Federal Alcohol Regulations do not permit the use of the word unless the particular brandy is actually produced in the district named; that "all Cognac is brandy, but all brandies are not Cognac"; that "Calognac" is a mere obvious corruption of "Cal. Cognac," and that it is "unregistrable as being descriptive or misdescriptive as applied to domestic brandy"; that it is calculated to confuse and deceive purchasers "in the absence of any showing in the record that applicant's brandy is imported genuine Cognac brandy," and that it would "falsely indicate the origin of applicant's brandy."

We think it clear that the commissioner was right in holding appellant entitled to file the notice of opposition. In addition to

the authorities upon this point cited by him, supra, attention may be directed to the case of Model Brassiere Co., Inc. v. C.C.P.A., Patents, 1294, where a majority Bromley-Shepard Co., Inc., 49 F.2d 482, 18 of this court affirmed the decision of the commissioner holding that a party, upon a showing of probable injury, might maintain an action for cancellation of a registered mark found to be descriptive, even though such party did not show that it was using the mark at the time the petition for cancellation was filed.

It may be further remarked that independent of appellant's right to oppose, it was within the authority of the commissioner to consider ex parte appellee's right to register, and since he, in effect, dismissed the opposition his conclusion may be regarded as an ex parte decision. By appealing, appellant, of course, preserved its status as an opposer. Hence, the necessity for our consideration of that phase of the case.

We find ourselves in disagreement with the tribunals of the Patent Office in dismissing the notice of opposition. We think there is such a similarity between "Calognac" and "Cognac" that confusion would be likely to result from the application of "Calognac" to brandies.

The gist of the commissioner's closely reasoned decision appears to be fairly comprehended in the following excerpt from it:

"Now it must be presumed that people know the correct spelling and pronunciation of 'Cognac'. It is an ordinary word of long standing in the English language, and, as stated, appears to have no meaning or significance other than the natural descriptive or geographical meaning it has always had, and in this respect it differs from a word or name which has something fanciful or arbitrary about it or which includes some arbitrary or fanciful meaning or significance. It seems to me the presumption is not so strong that the spelling, pronunciation and meaning of a word of this latter character will be recognized and remembered as exactly as that of an ordinary word which has no meaning other than its ordinary and usual meaning and there will be more likelihood of confusion of a somewhat similar, but different, word with a word having arbitrary or unnatural significance than with a word carrying no more than its natural, elementary significance and meaning. In my opinion it is quite possible that the same artificial trademark significance may appear to be present in words which differ considerably in spelling, appearance and pronunciation; whereas only a very small variation in ordinary words is possible without destroying their meaning or giving them a different meaning. I hold that it would not be proper to consider the word 'Cognac' here as if it had something fanciful or arbitrary about it, since from the record it does not appear that such is the case.

"The word 'Cognac' has two syllables and is pronounced 'Ko'-nyak'. It has no arbitrary or fanciful meaning or significance. The word 'Calognac' has three syllables and the American pronunciation would be either 'Ca-log'-nak' or 'Cal'-ognak'. I think the former pronunciation would be the more natural, following the pronunciation 'ca-lor'-ic'. The word is somewhat arbitrary and fanciful in spelling and pronunciation, sufficiently so, in my opinion, to give it some degree of trade-mark significance. In these respects it differs from the word 'Cognac'.

"Considering the matter in all its aspects I find myself in agreement with the examiner's opinion that it is not likely the word 'Calognac' will be believed by the public and purchasers to be the generic name of Cognac brandy and further that the word is not descriptive of cognac and it is not descriptive of domestic brandy, and no confusion or deception of purchasers appears likely to result from the use by applicant of the mark 'Calognac' on brandy, domestic or otherwise."

We have no quarrel with the commissioner's assumed pronunciation of the respective words, although "Calognac" being a coined term any pronunciation of it would be more or less a matter of individual choice, but pronunciation, as we view it, is not an important—certainly not a controlling—factor here. The application for its registration does not divide the term into syllables. The first letter of it, and the last four letters are identical with similar letters of Cognac. If the next two letters (A and L) were eliminated there would remain only the word Cognac. Certainly, the two terms are quite similar in appearance. We are unable to escape the conclusion that appellee, whatever its motive, in trying to establish a trademark sought one as nearly like Cognac as

it could find or coin, and in adopting "Calognac" it certainly made a close approach.

As has been stated, it appears from the record that so far "Calognac" has been used only on domestically distilled brandies, and the labels showing the manner of its use recite "California Grape Brandy," but, as of course, the notations on the labels other than the mark itself are of no moment in this particular proceeding, and it may be reiterated that, so far as the application is concerned, the term may be applied to any kind of brandy, no matter where or from what produced.

It is our view that the opposition should have been sustained and the registration denied.

The decision of the commissioner, therefore, is reversed.

Reversed.