**AMERICAN HISTORIC RACING MOTORCYCLE ASSOCIATION, LTD., Plaintiff,**

v.

**TEAM OBSOLETE PROMOTIONS, Defendant.**

No. 97–1263–Civ–ORL–18B.

United States District Court, M.D. Florida, Orlando Division.

Dec. 8, 1998.

Herbert L. Allen, Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A., Orlando, FL, Edward M. Bendelow, Nicole Y. Pieterse, Bendelow & Darling, Denver, CO, Nicole Y. Pieterse, Bendelow & Darling, P.C., Telluride, CO, for American Historic Racing Motorcycle Association Ltd.

Robert W. Duckworth, Robert L. Wolter, Holland & Knight—Maguire, Voorhis & Wells, LLP, Orlando, FL, for Team Obsolete Promotions.

## ORDER GRANTING SUMMARY JUDGMENT

G. KENDALL SHARP, District Judge.

The American Historic Racing Motorcycle Association Ltd. ("AHRMA") brings this trademark infringement and dilution action against Team Obsolete Promotions ("Team Obsolete") alleging that Team Obsolete unlawfully used AHRMA's registered trademark, BEARS. Team Obsolete counterclaims for declaratory judgment. AHRMA presently moves for summary judgment (Doc. No. 38) on all of the claims, and Team Obsolete argues in opposition that BEARS is a descriptive mark not entitled to trademark protection and, alternatively, that AHRMA abandoned the mark. Because the undisputed evidence shows that BEARS is a valid, unabandoned trademark, summary judgment is warranted.

### I. Background

BEARS is an abbreviation for British–European–American Racing Series. The abbreviation identifies a class of motorcycles that includes certain British, European, and American motorcycles. Since the 1980's, BEARS has been used in connection with international motorcycle events held in Australia, New Zealand, and Europe. (Aff. Iannucci ¶ 6.)

AHRMA sanctions, organizes, and promotes vintage motorcycle racing events. In 1995, AHRMA began using BEARS in con-

nection with motorcycle racing events held in the United States. During 1996 and 1997, AHRMA promoted and organized thirty-four events that included the BEARS class. (Aff. Smith ¶ 6.)

Team Obsolete has also used the BEARS mark in connection with motorcycle racing events held in the United States. Specifically, Team Obsolete used BEARS to promote and organize an event held at Del Mar, California in October 1996. (Doc. No. 46 Ex. A3.) Team Obsolete sent AHRMA a letter in May 1996 containing the rules and policies for the 1996 Del Mar event, and, in that letter, Team Obsolete listed BEARS as a racing class. (Dep. Smith at 99–101.) AHRMA also received an advertisement, a racing entry form, and a letter from a sponsor of the Del Mar event, each of which listed BEARS as part of the Del Mar event. (Doc. No. 46 Exs. A6, A9.)

In December 1996, AHRMA published an article entitled "From BEARS to Sound of Thunder," which announced a new motorcycle racing class called Sound of Thunder. (Doc. No. 46 Ex. B2.) Like the BEARS class, the Sound of Thunder designation had also been previously used in Europe. AHRMA's Sound of Thunder class included all of the BEARS class motorcycles plus certain Japanese motorcycles. Team Obsolete soon followed with a similar class of motorcycles, entitled Thunderbikes. (Doc. No. 38 Ex. C.)

In 1997, Team Obsolete again attempted to use the BEARS class in connection with an event. On October 7, 1997, AHRMA registered the trademark, BEARS, for use in connection with "sanctioning, organizing, and operating ... motorcycle racing and road rally events." (Doc. No. 5 Ex. A.) AHRMA then brought suit to enjoin Team Obsolete from using BEARS.

## II. Legal Discussion

AHRMA brings trademark infringement and dilution claims against Team Obsolete pursuant to 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), (c) and argues on summary judgment that the undisputed evidence, consisting of the parties' affidavits, depositions, and supporting documents, reveals that Team Obsolete unlawfully used AHRMA's valid BEARS trademark. For purposes of summary judgment, AHRMA waives its damages claims and seeks only injunctive relief. See Pl.'s Mot.Summ.J. at 10. In opposition to AHRMA's motion, Team Obsolete argues that the BEARS mark is a descriptive mark not entitled to trademark protection, that AHRMA abandoned the mark, that AHRMA is not the owner of the mark, and that laches, estoppel, and waiver bar AHRMA's claims. After addressing the appropriate standard of review, the court will address the merits of AHRMA's claims, Team Obsolete's defenses, and Team Obsolete's counterclaim. Because the court finds that AHRMA is entitled to relief under 15 U.S.C. § 1114, the court will not address AHRMA's claims under 15 U.S.C. § 1125(a), (c).

### A. Standard of Review

Summary judgment is appropriate "if, after viewing the evidence in the light most favorable to the non-moving party, the court finds that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." See Hauser v. Life Gen. Sec. Ins. Co., 56 F.3d 1330, 1333 (11th Cir.1995). After the moving party presents evidence sufficient to show that no genuine issue of material fact exists, the burden then shifts to the nonmoving party to demonstrate that a material issue of fact exists to preclude summary judgment. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### B. Trademark Infringement

■ To establish a trademark infringement claim under 15 U.S.C. § 1114(1)(a), a plaintiff must show (1) that the plaintiff has a valid trademark, (2) that the defendant used the trademark in commerce, and (3) that the defendant's use is likely to confuse or deceive the consuming public as to the source of the goods or services at issue. See Fila U.S.A., Inc. v. Kim, 884 F.Supp. 491, 494 (S.D.Fla. 1995); Dieter v. B & H Indus. of Southwest Florida, Inc., 880 F.2d 322, 326 (11th Cir. 1989).

#### 1. Valid Trademark

■ To receive trademark protection, "a mark must be valid and distinctive." Popu-

*lar Bank v. Banco Popular de Puerto Rico,* 9 F.Supp.2d 1347, 1356 (S.D.Fla.1998). AHRMA offers its certificate of registration to show that its trademark is valid and distinct. The certificate constitutes prima facie evidence that the mark is valid. *See* 15 U.S.C. § 1115(a).

To show that the mark is invalid, Team Obsolete argues that BEARS is a descriptive mark not entitled to trademark protection. Trademarks receive different degrees of protection depending upon the type of mark. In increasing order of protection, the categories include (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary.

■ A generic mark describes a class to which a particular good or service belongs. For example, the mark, Milk Delivery, when used to describe a milk delivery business, constitutes a generic mark. *See Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.,* 931 F.2d 1519, 1522–23 (11th Cir. 1991). Generic marks do not enjoy trademark protection because the protection of generic marks would substantially impair a competitor's ability to identify its goods or services. *See id.*

■ A descriptive mark identifies a characteristic or quality of a good or service. For example, Vision Center is a descriptive mark when used to describe a store that sells eyeglasses. *See Vision Center v. Opticks, Inc.,* 596 F.2d 111, 116 (5th Cir.1979). Descriptive marks receive trademark protection only if they have acquired a "secondary meaning." *See id.* at 115.

■ A mark is suggestive if a customer can use his or her imagination to determine the nature of the product. For example, Citibank is a suggestive mark because Citibank connotes a modern or urban bank. *See Citibank, N.A. v. Citibanc Group, Inc.,* 724 F.2d 1540, 1545 (11th Cir.1984).

■ Finally, an arbitrary mark identifies a good or service unrelated to the mark's meaning. For example, Old Crow Whiskey is an arbitrary mark because the whiskey is not distilled from old crows. *See Great Southern Bank v. First Southern Bank,* 625 So.2d 463, 467 (Fla.1993). Suggestive and arbitrary marks receive the strongest protection because they allow the owner of the mark to identify its goods and services without impeding a competitor's ability to do the same.

■ Used in the context of motorcycle racing events, the phrase British–European–American Racing Series at least suggests and may describe a motorcycle class consisting of British, European, and American motorcycles. However, the question is whether the abbreviation, BEARS, is descriptive.

■ An abbreviation is treated similarly to its underlying phrase where the abbreviation imparts the original generic or descriptive connotation. *See Anheuser–Busch, Inc. v. A–B Distributors, Inc.,* 910 F.Supp. 587, 593 (M.D.Fla.1995); 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:37 (4th ed.1998). For example, MBE is a generic abbreviation for the generic name Multistate Bar Examination. *See National Conference of Bar Exam'rs v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 488 (7th Cir.1982).

■ Moreover, an abbreviation is treated similarly where the average prospective consumer recognizes the abbreviation as equivalent to the underlying phrase. *See G. Heileman Brewing Co. v. Anheuser–Busch, Inc.,* 873 F.2d 985, 994 (7th Cir.1989). For example, the mark LA has been held to be a descriptive mark for the underlying words, low alcohol, because statistical evidence showed that consumers widely recognized that LA, as applied to beer, stands for low alcohol. *See id.; cf. Anheuser–Busch, Inc. v. Stroh Brewery Co.,* 750 F.2d 631, 635 (8th Cir.1984) (examining consumer perception but finding that LA was a suggestive rather than descriptive term). Also, ROM (read only memory) and RAM (random access memory) are widely recognized, generic names for microcomputer elements. *See* McCarthy, *supra,* § 12:37 (citing *Intel Corp. v. Radiation, Inc.,* 184 U.S.P.Q. 54 (Trademark Tr. & App.Bd.1974)); *see also Martell & Co. v. Societe Anonyme De La Benedictine,* 28 C.C.P.A. 851, 116 F.2d 516, 519 (Cust. & Pat.App.1941) (the abbreviation, B and B, is a generic name for benedictine and

brandy). Because individuals have a tendency to attach abbreviations to their underlying phrases, some courts have created a presumption that the public regards initials as standing for the underlying descriptive term. *See G. Heileman Brewing Co.*, 873 F.2d at 994.

In the present case, the court finds that BEARS is an arbitrary mark rather than a descriptive mark for several reasons. On its face, BEARS does not convey the phrase, British–American–European Racing Series. Unlike an abbreviation such as MBE, which stands for Multistate Bar Examination, BEARS doubles for an animal and an abbreviation. Consequently, a consumer who sees BEARS in connection with motorcycle racing may associate the word with any number of things, and not immediately think that BEARS is an abbreviation. This is particularly true because, aside from the AHRMA rulebook and articles discussing BEARS, the promotional materials do not feature BEARS together with its underlying phrase.

Further, the undisputed evidence shows that motorcycle racing enthusiasts in America do not recognize BEARS as a generic motorcycle racing class, but instead they associate the mark with AHRMA's entertainment services. Motorcycle racing enthusiasts in the United States are probably well-informed about their sport, and they could have learned about the BEARS class through motorcycle magazines and other media published in America when the BEARS class was first introduced in international racing during the 1980's. However, most motorcycle enthusiasts in the United States undoubtedly learned of BEARS when AHRMA brought BEARS class events to the United States in 1995 and subsequently became the principal organizer of such events in the United States. Consequently, the court can only conclude that motorcycle enthusiasts in the United States associate BEARS with AHRMA's services and do not view the mark as simply a generic identifier for a motorcycle class. As such, BEARS is not within the public domain but is instead an arbitrary trademark entitled to the fullest protection.

The protection of the BEARS mark does not impede the goals of trademark law. The goals of trademark law include, among other things, (1) to prevent consumer confusion as to the source of goods or services and (2) to simultaneously allow competitors to identify their goods. *See Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 609 (7th Cir.1986) (Posner, J.). AHRMA only claims ownership over the mark, BEARS, and not the underlying words, British–European–American Racing Series. Moreover, classifications such as Sound of Thunder show that a wide range of terms can be used to identify motorcycle classes. Consequently, protection of the BEARS mark would allow AHRMA to identify its own racing class without frustrating Team Obsolete's ability to identify a similar class of motorcycles used at Team Obsolete's events.

#### 2. Team Obsolete's Use of the Trademark in Commerce

Both parties agree that Team Obsolete used the BEARS mark in connection with its 1996 Del Mar event. Therefore, Team Obsolete used the mark in the stream of commerce, and the second element is met.

#### 3. Likelihood of Confusion

The final element involves whether Team Obsolete's use of BEARS will cause consumers to become confused as to the source of the services associated with the mark. To determine whether the defendant's use is likely to cause confusion, courts consider seven factors: (1) the type of trademark, (2) similarity of the mark, (3) similarity of the products the marks represent, (4) similarity of the parties' customers, (5) similarity of advertising media used, (6) defendant's intent, and (7) actual confusion. *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 122 F.3d 1379, 1382 (11th Cir.1997). The type of mark and the evidence of actual confusion are the two most important factors. *See id.*

The factors weigh in favor of AHRMA. As previously discussed, the BEARS mark is an arbitrary mark entitled to the greatest protection. Moreover, the similarity of the

marks is undeniable because AHRMA and Team Obsolete have been using the same mark, BEARS. Also, both AHRMA and Team Obsolete have used the mark in connection with the same services, their promotion and organization of motorcycle events. Further, AHRMA and Team Obsolete both offer their services to the same customers, motorcycle enthusiasts throughout the United States, and they advertise these services through similar media, such as newsletters, flyers, posters, entry forms, internet postings, and advertisements in motorcycle magazines.

The factor of bad faith also favors AHRMA. A defendant's bad faith may justify an inference of confusing similarity. *See Popular Bank*, 9 F.Supp.2d at 1360. On the one hand, Team Obsolete may have used the BEARS mark believing that the mark was in the public domain. Alternatively, Team Obsolete has a history of shifty behavior in its dealings with AHRMA. Jeff Smith, the president of AHRMA, stated that Robert Iannucci, the president of Team Obsolete, on several occasions agreed to stop using the BEARS mark, but then would later begin using it again. *See* Dep. Smith at 116. Moreover, when AHRMA decided to switch to the Sound of Thunder designation, Team Obsolete mirrored AHRMA's choice by creating a similar racing class with a similar name, Thunderbikes. Although not conclusive, these facts show that Team Obsolete has a pattern of copying AHRMA's classifications, and that Team Obsolete may have acted in bad faith when it used the BEARS mark.

■ The final factor is actual confusion, which involves "reported instances of individuals who have actually become confused about the source of the services because of the similarities between the parties' trademarks." *Popular Bank*, 9 F.Supp.2d at 1360. Although actual confusion is an important factor, proof of actual confusion is not critical to establishing a likelihood of confusion. *See E. Remy Martin & Co. v. Shaw–Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985); *Popular Bank*, 9 F.Supp.2d at 1360. In the present case, AHRMA fails to offer any evidence of actual confusion. In con-

trast, Team Obsolete offers circumstantial evidence that motorcycle enthusiasts are relatively sophisticated and would not be misled if both AHRMA and Team Obsolete used the BEARS mark. Although the evidence regarding Team Obsolete's intent is inconclusive and AHRMA fails to offer any evidence of actual confusion, the court finds that Team Obsolete's use of BEARS creates a likelihood of confusion as to the source of the services because BEARS is an arbitrary mark entitled to the utmost protection and because even a sophisticated consumer cannot distinguish between Team Obsolete's use of BEARS and AHRMA's use of BEARS when set forth in similar media to advertise similar services.

In sum, the undisputed evidence establishes the elements of AHRMA's case, namely that AHRMA has a valid trademark, that Team Obsolete used that mark in commerce, and that Team Obsolete's use creates a likelihood of confusion. Team Obsolete offers several affirmative defenses to combat this finding.

### 4. Abandonment Defense

■ Team Obsolete argues that the BEARS mark is invalid because AHRMA abandoned the mark. To prove abandonment, a defendant must show that a plaintiff actually and intentionally abandoned the use of the mark. *See Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1516 (11th Cir.1984).

■ Team Obsolete asserts that AHRMA abandoned BEARS when AHRMA published the article that announced AHRMA's change from the BEARS class to the Sound of Thunder class. Team Obsolete also argues that AHRMA abandoned BEARS when AHRMA replaced its 1997 BEARS events with Sound of Thunder events. This evidence is insufficient to establish that AHRMA intended to abandon BEARS because AHRMA's change from BEARS to Sound of Thunder did not preclude AHRMA from assigning BEARS to a new class of events. In fact, that is what AHRMA eventually did. *See* Second Aff. Smith ¶ 5. Because AHRMA did not actually nor intentionally abandon BEARS, Team Obsolete's abandonment defense fails.

### 5. Actual Ownership Defense

 Team Obsolete also argues that AHRMA is not the owner of BEARS because various organizers have used BEARS in international events and because Team Obsolete and at least one other organizer have used BEARS in the United States. Although BEARS may have been used in international racing, foreign use does not establish trademark rights in the United States. *See Buti v. Impressa Perosa S.R.L.*, 139 F.3d 98, 45 U.S.P.Q.2d 1985, 1990 (2d Cir.1998). Moreover, the undisputed evidence shows that AHRMA was the first to bring BEARS to the United States and has certainly been the principal user of the mark in the United States. Consequently, AHRMA owns the BEARS mark.

### 6. Defenses of Estoppel, Waiver, and Laches

Team Obsolete also argues that summary judgment should be denied because AHRMA failed to address Team Obsolete's defenses of laches, estoppel, and waiver. Because Team Obsolete bears the burden of proof on the defenses of waiver, estoppel, and laches, AHRMA on summary judgment must point out the insufficiency of Team Obsolete's evidence or must produce affirmative evidence showing that Team Obsolete can not prove the defenses at trial. *See United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991). Although AHRMA did not specifically address these defenses in AHRMA's summary judgment motion, AHRMA did bring forward sufficient evidence to show that the defenses are without merit.

 To establish the defense of laches, a party must show "(1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that the delay caused the defendant undue prejudice." *Conagra*, 743 F.2d at 1517. An estoppel defense requires proof of similar elements, including the third element of the laches defense that the defendant suffer some undue prejudice. *See Sun-America Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1345 (11th Cir.1996) (Birch, J., concurring).

 In this case, laches and estoppel do not bar AHRMA's action because Team Obsolete did not suffer any undue prejudice. Team Obsolete only successfully used the BEARS mark at the 1996 Del Mar event. Moreover, Team Obsolete's president testified that Team Obsolete has derived "very little" revenue from using the BEARS mark and that Team Obsolete's sponsors do not even recognize the mark. *See* Dep. Iannucci at 69–70, 98. If anything, the record shows that Team Obsolete knew of AHRMA's use of the BEARS mark well before Team Obsolete contemplated using BEARS, and thus Team Obsolete acted at its own peril when it used BEARS. *See Sun America Corp.*, 77 F.3d at 1345 (Birch, J., concurring).

 Team Obsolete's waiver argument is also meritless. To establish a waiver defense, a party must bring forth proof of an intent to relinquish a known right. *See Palmer v. Fuqua*, 641 F.2d 1146, 1160 (5th Cir.1981). This is the same element required for the abandonment defense. AHRMA's article discussing the change from BEARS to Sound of Thunder and AHRMA's failure to bring suit against Team Obsolete immediately following the 1996 event are simply insufficient to establish an intent on the part of AHRMA to waive their rights to the BEARS mark.

### C. Team Obsolete's Counterclaim

Team Obsolete counterclaims for declaratory relief requesting that the court declare that AHRMA abandoned BEARS, that BEARS is a descriptive mark not entitled to protection, and that AHRMA fraudulently obtained its trademark because AHRMA knew that it had abandoned BEARS at the time AHRMA applied for the trademark. Because the court has already found that BEARS is a protected, unabandoned mark, Team Obsolete's counterclaim for declaratory judgment fails on summary judgment.

### III. Conclusion

The undisputed evidence shows that BEARS is an arbitrary mark entitled to trademark protection and that AHRMA did not abandon its rights to use the BEARS mark. Consequently, the plaintiff's motion

for summary judgment (Doc. No. 38) is **GRANTED.** The court hereby **ENJOINS** Team Obsolete from using the protected mark, BEARS, in connection with sanctioning, organizing, promoting, or operating any motorcycle racing or road rally events.

The court directs the clerk of court to enter the appropriate judgment and close the case. It is **SO ORDERED.**