48 CCPA

**DE WALT, INC. (Pennsylvania Corp.), DeWalt, Inc. (Delaware Corp.), (Assignee by mesne assignments, substituted), Applicant-Appellant,**

v.

**MAGNA POWER TOOL CORPORATION (Yuba Consolidated Industries, Inc., substituted), Opposer-Appellee.**
Patent Appeal No. 6638.

United States Court of Customs
and Patent Appeals.

April 14, 1961.

Martin, J., dissented.

Rogers, Hoge & Hills, James F. Hoge, New York City (Mercer L. Stockell, New York City, of counsel), for appellant.

Flehr & Swain, Paul D. Flehr, San Francisco, Cal. (John F. Swain, San Francisco, Cal., of counsel), for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and WILLIAM H. KIRKPATRICK, Judge.[*]

RICH, Judge.

DeWalt, Inc. applied for registration on the Principal Register of the words "Power Shop" as a trademark for woodworking saws, application Ser. No. 14,-135 filed August 17, 1956. The original applicant was a Pennsylvania corporation, now replaced through mesne assignments by a Delaware corporation of the same name. Use since February 10, 1953, was claimed, which date applicant sought to amend to "at least as early as October 10, 1949."

Notice of opposition to the registration was filed February 25, 1957, by Magna Power Tool Corporation, a corporation of California, as maker and seller of the "Shopsmith,"[1] a multiple-purpose power tool, claiming prior and extensive use in a descriptive sense of the words "pow-

er shop." Paragraph 5 of the Notice of Opposition reads:

"The term 'Power Shop' in connection with woodworking saws and woodworking shops has a common accepted meaning both in the trade and to the public, viz., a shop or workshop in which the tools are power tools rather than hand tools. Woodworking saws are commonly found in such power shops."

Opposer asserts it would be damaged by the registration because, as applied to woodworking saws, "Power Shop" is a common, descriptive, generic term the registration of which would be a threat to opposer, its customers, or any other member of the public selling power tools similar to those of the parties, since it would make possible harassment by litigation based on the registration. It was further alleged that registration would be contrary to sections 2(e) and 2(f) of the Trademark Act of 1946, 15 U.S. C.A. § 1052(e, f) and in derogation of prior rights of the opposer and of all others similarly situated.

The basic "Shopsmith" tool, for which an extensive line of accessory tools is sold, is a combination shop tool, as distinguished from a hand tool, powered by a substantial electric motor and capable, by various adjustments or conversions, of serving as a vertical drill press, a table saw, a lathe, a disc sander, or a horizontal drill press, all intended primarily for use in woodworking. It is five feet long and weighs over 200 pounds. By substituting various tools it can also be used for grinding, buffing, mortising, jointing and shaping. An advertising piece attached to the Notice of Opposition shows that this tool was promoted by use of the prominent, and we may say apt, phrase "The *Complete* Power Shop in *One* Tool."

---

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28 United States Code.

[1]. The trademark "Shopsmith" is in no way involved in this proceeding. The "Shopsmith" is simply the tool or machine in connection with which opposer made descriptive use of "power shop." It was first sold in 1947.

The woodworking saw sold by DeWalt, in connection with which it has employed the designation "Power Shop," is a competitive item in a similar price range. Technically it is known as a radial-arm saw and is the smallest member of a line of such saws sold by DeWalt which have ranged from one-half to fifteen horsepower. The smallest member, which was originally a half horsepower model but which has been constantly increased in power, commenced its market career some time prior to 1948 as the "Moto-Miter Box." In 1949 Mr. Dudley, a district manager of DeWalt on the West coast, got the idea of promoting the "Moto-Miter Box," theretofore sold primarily to building contractors, to the home workshop market through hardware and department stores. Since he disliked the name "Moto-Miter Box" and considered it unsuitable for use in connection with such a promotion, he selected the name "Power Shop," persuaded the company to adopt it, and the term "Power Shop" has ever since been used in connection with the small DeWalt saw. That designation has appeared in many different forms and, if we may be permitted to judge from what we can see in the current daily papers, the form of use is still undergoing changes. But from the record we may say that the two words "power shop" have sometimes been in larger type than "DeWalt" and sometimes smaller. They have been used in single quotes, double quotes, and without quotes. They have sometimes been used in such manner as in no way to distinguish them from other descriptive terminology. On the whole record, however, there seems to have been substantial use of the words as a trademark; or at least it is clear DeWalt attempted to make a trademark use of them.

Like "Shopsmith," the "DeWalt Power Shop" has been promoted as a multiple-purpose tool. One piece of literature, copyright 1949, calls it the "machine of 1001 uses" (initially 101 uses, which was felt to be too modest) and specifies the following ten main categories: tilting arbor saw, cut-off saw, dado machine, shaper, router, tenoner, sander, horizontal drill, grinder, and metal cutter. By using other attachments which DeWalt sells as accessories, still other functions can be performed.

The general factual background of the issues here may be summed up as follows: Commencing at about the same time in 1949, the applicant, DeWalt, and opposer, Magna, have both used the words "power shop" in connection with the sale of multiple-purpose power tools which are basically woodworking saws. DeWalt, after using these words in a variety of ways for about seven years, decided to register them as a trademark. Magna, after using the identical words to *describe* its "Shopsmith," making no claim to any trademark rights in the words "power shop," opposes the registration because it considers that the registration may interfere with a continuation of the descriptive use it has been making of those words over a long period of time.

As might be expected, the parties take up diametrically opposed positions, Magna claiming that the words "power shop" are wholly descriptive of power saws and DeWalt insisting that they are not and saying that even if they are, they have become distinctive of its goods through long use and substantial advertising which has given them a secondary meaning. As is so frequently the case, the truth of the matter appears to lie somewhere in between.

There is also a dispute as to which party was the first to use "power shop" in its promotion of saws but in the view we take of the case this question of priority is of no legal significance.

The Trademark Trial and Appeal Board sustained the opposition, holding Magna to be a prior user by reason of published advertising in September, 1949, whereas DeWalt's proofs did not satisfactorily establish a date earlier than

October 9, 1949.[2] As noted above, the priority issue is a close one, both parties having started use about the same time. But since this is not a dispute over which of two claimants is entitled to a *trademark* on the basis of priority, it is our view that priority is not the determining factor.

The board did not rule specifically on the question whether "Power Shop" is a descriptive term, for which reason DeWalt says that that issue was never reached by the board. The board did, however, make the following statement from which we think it may reasonably be inferred that the board did consider the term to be descriptive:

> " * * * opposer and its franchised dealers have, since September, 1949, and at considerable expense, continuously and extensively advertised its "Shopsmith" tool through newspapers, nationally distributed consumer and trade publications, and other media, and have consistently used the term "Power Shop" and/or "Power Work Shop" in its advertising copy *to describe* its product." [Emphasis ours.]

Our review of the record shows the foregoing statement of fact to be well supported. The principal facts to be taken into account are that nearly four million copies of a circular were distributed during the years 1949–1953 which described the "Shopsmith" and had on its cover in bold type the phrase "The *Complete* Power Shop in *One* Tool." The same slogan or descriptive phrase appeared in many advertisements and on a thousand point of sale panels which were set up as "Shopsmith" displays in stores from coast to coast. Other similar expressions used in 1949 and 1950 in national advertising were such as "All-Purpose, Farm-Fitted Power Shop," "heavy-duty power shop," "the complete power shop in one unit," and "complete power workshop." We consider "power shop"

simply a short form of "power workshop." All of this extensive use occurred before DeWalt made application to register "Power Shop."

On the basis of the foregoing there can be no question but that "power shop" *as used by Magna* in its "Shopsmith" promotion was used descriptively. On this basis it can be said to be "descriptive." The phrases in which use occurred make sense.

On the other hand, apart from Magna's use, it is not self-evident that the term "power shop" is descriptive of a saw. There is merit to DeWalt's argument that a "shop" is a place, not a tool, and that a saw is not a shop. We also agree that it is not at all necessary to use the term "power shop" to describe either Magna's multi-purpose tool, the unique "Shopsmith," or DeWalt's radial-arm power saw. In a certain context "power shop" may have a clear descriptive connotation but in another context it becomes merely suggestive of the great usefulness and versatility of some machine or other which it wholly fails to "denominate," as appellant says. This poses something of a dilemma. DeWalt may very well have some enforceable common law trademark rights in "Power Shop" by reason of its use and advertising of the term; but those rights, whatever they are, cannot be such as to enable it to require opposer to stop using the identical term in a descriptive manner. It is not our task, however, to pass on those rights in this proceeding. The only issue here is the narrower statutory issue of registrability under the Trademark Act of 1946 and to that issue we necessarily confine our decision.

█ The first step toward that decision is our conclusion that where opposer is not claiming trademark rights but merely freedom to continue a descriptive use, the situation must be judged and the right to registration decided on the basis of the factual situation as of the time

---

2. Magna Power Tool Corporation v. American Machine & Foundry Company, 122 USPQ 622, decided Sept. 10, 1959. The board also wrote a second opinion,

October 8, 1959, on a petition for rehearing, which seems to emphasize that its decision was based on priority.

when registration is sought. Registration in this case was not applied for until August 17, 1956, by which date Magna had been plugging its "Shopsmith" as a "complete power shop in one tool" for nearly seven years. Regardless of whether "power shop", prior to such use, was descriptive of woodworking power saws, that promotion certainly gave the term a descriptive significance in the very market where DeWalt's radial-arm saw is being sold.

■■ Trademark rights are not static. A word or group of words not descriptive today may, through usage, be descriptive tomorrow. And, conversely, as is recognized in section 2(f), the *possibility* always exists, with respect to words *capable* of distinguishing an applicant's goods in commerce, that descriptive words *may* become registrable trademarks. It is for this reason that we are considering the situation as of 1956 and disregarding the dispute over priority.

■ On the record here we feel constrained to hold that "Power Shop" falls within the prohibition of section 2(e) which prevents the registration of a mark which, "when applied to the goods of the applicant is merely descriptive." We deem the goods of the parties before us to be identical so far as trademark law is concerned. If "power shop" is an apt term to describe opposer's goods, then it is just as descriptive of applicant's goods. The evidence in the case is more than sufficient to show that the "Shopsmith" is appropriately called a "power shop" or "power workshop" because possession of this tool and its accessories actually provides one with a power shop for woodworking. So does ownership of a DeWalt saw and its accessories. But this, alone, is not dispositive of the case.

DeWalt argues that even if the position we have taken as to descriptiveness is correct, *Magna could not be damaged by registration of "Power Shop" to DeWalt because the term "could be registered under Section 2(f) in any event."* As hereinafter explained, this is a non

sequitur. At the same time DeWalt insists that its application is not made "under" that section and seems to regard registration "under 2(f)" only as a future possibility.

We do not know any reason why DeWalt should be confident of registrability under section 2(f). That section does not say when any mark shall be registrable. It merely provides, as to marks which have "become distinctive of the applicant's goods in commerce," that "nothing herein shall prevent the registration" and states one ground on which the Commissioner is authorized to find that distinctiveness of the mark has been prima facie established. That one ground requires that the applicant's use shall, inter alia, have been "substantially exclusive." This would seem to be an impossibility in view of Magna's millions of competitive and continuing uses of "power shop."

In any event there is no logic in DeWalt's argument. Even if DeWalt were consciously asserting a right to registration "under Section 2(f)," registration could not be granted without considering whether it would be damaging to opposer.

■ It is not altogether clear, furthermore, what DeWalt means when it says its application is not made under section 2(f) for a page later it is asserting that "Power Shop" is "distinctive within the meaning of Section 2(f). The proof of secondary meaning is clearly adequate." We suppose the "proof" referred to is the evidence in the record before us and our understanding of present practice is that no more is necessary to bring an application "under section 2(f)" than the assertion that the mark is registrable by reason of its having become distinctive. See Trademark Rules of Practice, (1959) Rule 2.41 and form 4.1, note (4), 15 U.S.C.A. Appendix. In any event, we treat the application, and the applicant, on the basis that registrability is urged by reason of an established "secondary meaning" in the term "Power Shop" because of which it is alleged to distinguish the

applicant's goods in commerce. So considering it does not lead us to any different conclusion.

■ When the statute, section 13, 15 U.S.C.A. § 1063, says that a person who "believes that he would be damaged by the registration of a mark" may oppose registration, we take it to mean that if we find clear possibility of damage to established rights of an opposer which are entitled to legal protection, then we shall sustain the opposition. We assume an opposition could not be won by showing only *damnum absque injuria*. In this case we think registration might well be damaging to protectible rights of opposer.

We find that Magna has a long established right to use "power shop" descriptively and prominently in connection with the sale of woodworking saws and it would be inconsistent to register "Power Shop" to DeWalt for those wares because to do so would give it the benefit of section 7(b), 15 U.S.C.A. § 1057(b). That section provides that registration on the Principal Register is prima facie evidence of the registrant's "exclusive right to use the mark in commerce in connection with the goods." The goods are power saws. The "mark" consists of the two words "Power Shop." Implicit in an "exclusive right" to use is the right to *exclude others*. DeWalt does not have the right to exclude Magna from the use of the words "power shop." To put it in possession of prima facie proof of a right it does not have, which it might at any time decide to assert against Magna, would, in our opinion, be damaging to Magna since it could at least be used to harass Magna into ceasing the use of "power shop" on pain of defending a lawsuit. Moreover, the outcome of such a suit is far from certain.

■ This court, since the earliest days of its jurisdiction over Patent Office appeals, has adhered to the then already established principle that damage to an opposer or injury to a petitioner for cancellation—those being the terms of the old law now replaced in the Lanham Act by "damage" in either situation—will be presumed or inferred when the mark sought to be registered is descriptive of the goods and the opposer or petitioner is one who has a sufficient interest in using the descriptive term in its business. California Cyanide Co. v. American Cyanamid Co., 40 F.2d 1003, 17 CCPA 1198 ("Calcyanide"), Model Brassiere Co., Inc., v. Bromley-Shepard Co., Inc., 49 F.2d 482, 18 CCPA 1294 ("ensemble"), United Shoe Machinery Corp. v. Compo Shoe Machinery Corp., 56 F.2d 292, 19 CCPA 1009 ("compo"), Martell & Co. v. Societe Anonyme de la Benedictine, etc., 116 F.2d 516, 28 CCPA 851 ("B and B"), Burmel Handkerchief Corp. v. Cluett, Peabody & Co., Inc., 127 F.2d 318, 319, 29 CCPA 1024 ("Handkerchiefs-of-the-Year"), Meehanite Metal Corp. v. International Nickel Co., Inc., 262 F.2d 806, 46 CCPA 765 ("spherulite"), J. Kohnstam, Ltd. v. Louis Mark & Co., Inc., and Linemar Co., Inc., 280 F.2d 437, 47 CCPA 1082 ("matchbox").

Relatively few of the proceedings in which the applicability of the foregoing principle is involved reach this court so we do not often have occasion to apply it. In the Patent Office, however, its application appears to have become routine where opposition is made to the registration of descriptive terms, the reason for presuming damage sometimes being stated as potential interference with opposer's rights predicated on the statutory rights flowing from the registration. We note with approval the following decisions presuming or inferring damage within the past three years: The Borden Co. v. G. P. Gundlach & Co., Inc., 117 USPQ 102 ("Dutch Apple"), Wenham Supply Company v. Contour Truck Guards, Inc., 119 USPQ 302 ("contour"), Bendix Aviation Corporation v. Westinghouse Electric Corporation, 120 USPQ 230 ("magamp"), Koppers Company, Inc., v. Allgemeine Holzimpragnierung Dr. Wolman, 120 USPQ 236, and 124 USPQ 114 ("thanalith"), Meyers Bros., v. System Auto

Parks, Inc., 120 USPQ 238 ("system"), Wilco Company v. Spray Products Corporation, 121 USPQ 277 ("65° below zero"), Batori Computer Company, Inc. v. Weems System of Navigation, 121 USPQ 280 ("Mark II"), Re-Ward Ceramic Color Mfrs., Inc. v. Robert R. Umhoefer, Inc., 121 USPQ 606 ("One Stroke"), Jones & Laughlin Steel Corporation v. Bliss & Laughlin, Incorporated, 122 USPQ 282 ("strain tempered"), Wyzenbeek & Staff, Inc. v. Speedway, 122 USPQ 580 ("speed saw"), and Massey-Ferguson Inc. v. Sperry Rand Corporation, 125 USPQ 316 ("hay-in-a-day"). By way of contrast we note the following two cases in which the principle was not applied because the term sought to be registered, though comprising words capable of descriptive use, was held not to be "descriptive" of the goods within the meaning of the statute: A. B. Dick v. Whitin Machine Works, 118 USPQ 380 ("Masterlith" opposed by supplier of materials for making lithographic masters), and Knomark Manufacturing Company, Inc. v. The Rapp-Ramsey Company, 120 USPQ 338 ("Shrine" for household cleanser opposed by shoe-polish manufacturer). The last two cases well illustrate where the line is drawn. But here we hold "Power Shop" to be "descriptive" and damage from the registration, consistently with all of the foregoing decisions, is to be presumed. *Stare decisis* would be a sufficient reason but aside from legal technicalities the rule is based on very practical considerations. The evidentiary value of a Principal Register registration under Section 7(b) of the statute makes it a potent weapon in litigation and this, plus the respect in which business men hold certificates of Federal registration, makes such a registration an encouragement to suits and other types of harassment which would be much less likely to occur in its absence.

To summarize: "Power Shop" is descriptive under section 2(e) because through Magna's use the term had become descriptive of the goods here involved long prior to DeWalt's application to register. Section 2(f) is not a provision that every descriptive term which acquires a de facto secondary meaning becomes registrable automatically.[3] Some descriptive words may become registrable when no conflicting rights are asserted. "Power Shop" appears to be such a term. While section 2(f) opens to the applicant the *possibility* of establishing registrability notwithstanding 2(e), here the proof by opposer of its conflicting right to use the mark prevents its registration. We agree with opposer that registration would be a threat to it and its customers, would make harassment possible, and would be in derogation of opposer's established rights.

In this situation we wish it to be clear that we are voicing no opinion on the applicant's right to prevent infringement by others of whatever trademark rights—as distinguished from registration rights—it may have, insofar as it may be able to establish those rights without the aid of a registration.

For the foregoing reasons the decision of the board sustaining the opposition must be *affirmed*. One further procedural matter remains.

A motion has been made in this court that Yuba Consolidated Industries, Inc., a Delaware corporation, be substituted for the original opposer, Magna Power Tool Corporation. It appears that Magna changed its name to Yuba Power Products, Inc., and, under the latter name, then transferred all of its assets

---

3. Some descriptive words are incapable of registration under any circumstances even if they have acquired a "secondary meaning," temporarily, because they are the common names of things. See for example section 14(c), 15 U.S.C.A. § 1064(c) which expressly provides for the cancellation of the registration of a mark which has become the common descriptive name of an article on which the patent has expired. Expiration of patent, however, is not the only circumstance under which a word or group of words may become the only name a thing has, in which case it cannot also be a trademark.

to the corporation sought to be substituted, the latter being the owner of all of the stock of the transferor. DeWalt has argued that the substitution should not be made but after careful consideration, we see no good reason for not permitting it. The corporation to be substituted appears to be the sole party interested in selling the "Shopsmith," in connection with which the words "power shop" have been used. There is no showing that this business is not a continuing one. The motion to substitute is granted.

Affirmed.

WORLEY, C. J., concurs in the result.

MARTIN, Judge (dissenting).

I dissent from the majority opinion for the following reasons. The majority states "DeWalt may very well have some enforceable common law trademark rights in 'Power Shop' by reason of its use and advertising of the term; but those rights, whatever they are, cannot be such as to enable it to require opposer to stop using the identical term in a descriptive manner." The only exception that I take to this statement is the doubt cast as to whether DeWalt has established the fact that it has trademark rights in the words "Power Shop." The record contains ample evidence to prove that DeWalt has identified its products by this mark and that it has become distinctive of applicant's goods in commerce. This position is also substantiated by another statement in the majority opinion. After stating various ways that the words were used by DeWalt, it goes on to say "On the whole record, however, there seems to have been substantial use of the words as a trademark; or at least it is clear DeWalt attempted to make a trademark use of

them." Further, I assume the Patent Office believed that DeWalt has used the words as a trademark since it would have registered the mark if opposer had not intervened.

Let us analyze the words "power shop." According to Funk & Wagnalls New Standard Dictionary, 1938, shop means "1. A fixed place or building for the regular sale of commodities at retail; a store; as, a dry-goods *shop*; a butcher's *shop*. 2. A room or building for making or repairing any article, or the carrying on of any artizan craft; sometimes including both sale and manufacture; as, a blacksmith's *shop;* car-*shops.*" As used in connection with power saws it is *not descriptive* but *suggestive.* A descriptive term in this connection would be "power tool" or something similar. As to applicant's use of the term, there is no question but that it made a strenuous effort to use "Power Shop" as a trademark starting during the summer of 1949 and succeeded in doing so by its continued usage to identify its radial arm saw. It featured the mark extensively in newspaper, radio, television and display advertising. Its success in establishing "Power Shop" as a trademark is confirmed by the listings in three hardware trade publications [1] pertaining to this mark. These publications list the articles by brand names and under "P" "Power Shop" is identified as the name of the tool manufactured by DeWalt in the same manner as "Shopsmith" is shown as the power tool manufactured by Magna.

On the other hand, it is equally evident that Magna began to use "power shop" together with other words [2] in a descriptive manner in connection with its trademarked device in the spring or summer of 1949. Through the media of

---

1. Two of these are the same publication, "Hardware Age," although different issues thereof (1953 and 1957).

2. "The complete power shop in *one* tool." "For less than $200—and with 8 square feet of floor space—you can have a power shop second to none in capacity, accuracy, and flexibility. Its Shopsmith— five heavy-duty, extra-feature tools in one unit so beautifully engineered, so ingeniously designed that you can convert from tool to tool *in less than 60 seconds.*"

pamphlets, display advertising, magazines and newspapers, it described its "Shopsmith" in various ways using the words power shop or power work shop together with other words to do so. However, it never identified the source of its power tool by these words or endeavored in any way to make trademark usage of them to distinguish its device from those of others.

So, what do we have here? One company has successfully established a good trademark to identify its product while another has used the same words to describe its trademarked product for about the same length of time.

The question arises—What has Magna's descriptive use of the words done to the words? Has this usage forever precluded them from being a trademark? I think not. This descriptive usage of these words by one company cannot deprive them from becoming a valid trademark to identify another's product. There is no evidence that the public generally or, for that matter, the trade itself considered these words in the same category as zipper, aspirin or cellophane which became common designations for particular products, i. e., that they became the common designation for all *power tools* in the public mind. If such evidence was available, it would have been a simple matter for Magna to produce it.

Priority or descriptiveness of the wording cannot be the basis on which the issue here can be resolved. I believe this court must decide what the law is in a situation where two words have been used in different ways by two companies. One uses them as a trademark, the other, together with other words, to describe its trademarked article. The cases cited by the majority do not help solve the issue presented here. The opinions in all of the cases cited from this court are primarily based on the fact that the words involved were *descriptive* of the products. All but two were decided under the 1905 act which prohibited registration of descriptive words under any circumstances except under the ten-year provision. In the two involving the 1946 act, we found that the words were descriptive and there was no showing of secondary meaning so that registration could be granted under section 2(f).

In the Patent Office cases, the tribunal there found the words were either descriptive or that they did not identify the applicant's goods or distinguish them from the goods of others.

Since DeWalt has established "Power Shop" as a valid trademark for its product, registration should not be denied under the Lanham Act because, after all, the Lanham Act primarily recognizes the common law rights inherent in a trademark.

The Lanham Act provides "No trademark by which the goods of the applicant may be distinguished from the goods of others *shall be refused registration* on the principal register * * * unless * * *" [emphasis mine], and none of the paragraphs that so prohibit registration are applicable to this situation.

I also agree that opposer should not be precluded from continuing to use the words in a descriptive manner to describe its trademarked product. Moreover, I see no serious legal problem to which opposer would be subjected if it continues to do just that. If, however, it endeavors to make trademark use of the words in the future, naturally it would be doing so at its peril.

At this point it is interesting to note section 33(b) of the Lanham Act and particularly paragraph 5, 15 U.S.C.A. § 1115(b) (5) which read in part as follows:

"Sec. 33. * * *

"(b) If the right to use the registered mark has become incontestable under section 15 hereof, the certificate shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate subject to any conditions or limitations stated therein except

when one of the following defenses or defects is established:

\* \* \* \* \* \*

"(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to the publication of the registered mark under subsection (a) or (c) of section 12 of this Act: *Provided, however,* That this defense or defect shall apply only for the area in which such continuous prior use is proved."

Certainly if the Lanham Act recognizes a defense by one other than the registrant using the *mark,* it is reasonable to assume that one using the words descriptively, as here, would have at least the same quantum of defense.

The majority seems to predicate its conclusion on the possibility of applicant, if it is successful here, bringing an action against opposer to enjoin the latter's descriptive use of the words. I do not believe that the possibility of applicant bringing such an action against opposer represents the degree of damage contemplated by section 13 of the Lanham Act as a prerequisite to the *successful conclusion* of an opposition proceeding. This possibility exists whenever a trademark is registered. As a matter of fact, without his trademark being registered one can bring an action to endeavor to enjoin someone from using similar words as the applicant could very well have done in this situation. I do not believe this court will be successful in avoiding this ever-present possibility by denying registration of valid trademarks. Whether the plaintiff will be successful is another matter.

Section 13 provides that "Any person who believes that he would be damaged by the registration of a mark \* \* \* may \* \* \* file a verified notice of opposition \* \* \*." But the section does not state on what basis the opposer will be successful. It seems to me that even though one must allege that he would be damaged by the registration to maintain the action, there must be a finding that the mark in question is not entitled to registration under the act before the opposer can be successful. I find no cases and none have been cited which hold that under the 1946 act the mere allegation of damage is a basis for refusing registration of a mark *otherwise registrable.*

It comes down to this—one who has established a good trademark should be able to enjoy all the rights and privileges attached to such property, including registration under the Lanham Act, and at the same time, another who at the time of such registration had been using the words as part of a phrase or sentence merely to describe its goods, already identified by a trademark of different words, should be free to do so without these concurrent uses of the words resulting in legal complications for either party as long as the descriptive use has not made trademark usage by anyone impossible. I do not believe that Magna in this instance, by its usage, has stripped the words of trademark properties and, therefore, I do not believe that Magna can deprive DeWalt of its rights under the law any more than DeWalt can interfere with Magna in its descriptive usage of the words.