Paper No. 28
GDH/gdh

THIS DISPOSITION IS NOT
CITABLE AS PRECEDENT OF THE TTAB          MAY 11, 99

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

Plyboo America, Inc.
v.
Smith & Fong Company
_____

Opposition No. 103,719 to application Serial No. 74/644,642
filed on March 10, 1995
_____

Richard B. Crockett of Bond, Schoeneck & King for Plyboo America, Inc.

Michael B. Stewart and Cynthia B. Summerfield of Rader, Fishman & Grauer, PLLC for Smith & Fong Company.
_____

Before Seeherman, Hohein and Bucher, Administrative Trademark Judges.

Opinion by Hohein, Administrative Trademark Judge:

Smith & Fong Company has filed an application to register the mark "PLYBOO" for "bamboo laminate flooring and plywood made of bamboo".[1]

Plyboo America, Inc., as set forth in its amended notice of opposition, has opposed registration on the ground

---

[1] Ser. No. 74/644,642, filed on March 10, 1995, which alleges dates of first use of March 29, 1994.

that, on January 18, 1995, it "began engaging and continues to be engaged in the distribution and sale, through retail and wholesale, of plyboo flooring and other plyboo products in commerce under Opposer's PLYBOO mark"; and that applicant's "PLYBOO" mark, "when used on or in connection with the goods of Applicant, is merely descriptive of them".[2]

Applicant, in its answer thereto, has denied the salient allegations of the amended notice of opposition.

The record includes the pleadings; the file of the opposed application; and, as opposer's case-in-chief, the testimony, with exhibits, of Patricia A. Moody, Ph.D., an associate professor of English and linguist at Syracuse University. Applicant, as its case-in-chief, has submitted a notice of reliance upon (a) opposer's answers to applicant's first set of interrogatories; (b) certified copies of several third-party registrations for marks containing the term "PLY"; (c) certified copies of opposer's Canadian registration for the mark "PLYBOO" for bamboo flooring and the file history of the application for such registration; (d) a copy of opposer's abandoned application for federal registration of the term "PLYBOO" for bamboo flooring; (e) copies of articles from newspapers, magazines and trade journals; and (f) copies of

---

[2] Although opposer originally brought this opposition solely on the ground of a likelihood of confusion between its alleged "PLYBOO" mark for bamboo laminate flooring and plywood products and applicant's "PLYBOO" mark for bamboo laminate flooring and plywood made of bamboo, such ground was deleted from the amended notice of opposition in favor of the claim of mere descriptiveness as the only basis for opposition.

2

certain other documents.[3]  Opposer, in rebuttal, has filed a
notice of reliance upon copies of articles from newspapers and
magazines.[4]  Briefs have been filed, but an oral hearing was not
requested.

There is no issue as to whether opposer has standing to
bring this proceeding.[5]  Here, applicant has not only admitted in
its brief that opposer is "a competitor in the flooring industry"

---

[3] While opposer has not interposed an objection thereto, it is noted
that as to the official records and printed publications upon which
applicant relies, the notice of reliance fails to state the general
relevance of such materials as required by Trademark Rule 2.122(e).
Moreover, with respect to certain other documents attached to the
notice of reliance, namely, the curriculum vitae of Patricia A. Moody,
advertising literature by applicant and a printout of the first page
of its website, such documents are not proper subject matter for
introduction by means of a notice of reliance under Trademark Rule
2.122(e).  Nevertheless, inasmuch as opposer has treated them as part
of the record, the documents are deemed to have been stipulated into
the record, pursuant to Trademark Rule 2.123(b), for what they show on
their faces.  See TBMP §§707 and 708.

[4] It is noted that, like applicant, opposer's notice of reliance fails
to indicate the general relevance of such articles as required by
Trademark Rule 2.122(e).  Applicant, however, has treated the evidence
as part of the record and, consequently, it has been considered as if
stipulated into the record.  Two of the five articles, in any event,
are simply duplicates of those which opposer previously introduced as
exhibits to the Moody deposition.

[5] As stated, for instance, in 3 J. McCarthy, McCarthy on Trademarks &
Unfair Competition §20:11 (4th ed. 1998) (footnotes omitted):

Standing to oppose [on the ground of mere
descriptiveness] is presumed when the mark sought to be
registered is allegedly descriptive of the goods and the
opposer is one who has a sufficient interest in using the
descriptive term in his business.  For example, one who
makes and sells a product that could be described by the
term applicant seeks to register has standing to oppose.
....  However, at the minimum, it is necessary for opposer
to prove that it is engaged in the sale of goods of which
the applied-for mark is allegedly descriptive.

The Trademark [Trial and Appeal] Board has indicated
that a competitor presumptively has standing.  That is, one
has standing to oppose on the basis of alleged descriptive-
ness if one has a present or prospective right to use the
term descriptively in its business.  This can be proven by
evidence that opposer is a present or potential competitor.

and "a direct competitor of Applicant," but the record establishes that opposer "uses the PLYBOO Mark on and in connection with bamboo flooring products, plywood sheets made of bamboo, and bamboo panels" (answer to applicant's Interrogatory No. 3) and thus has standing to oppose.[6] The sole issue to be determined in this proceeding is consequently whether the mark "PLYBOO" is merely descriptive of applicant's goods.

According to the record, opposer "uses the PLYBOO Mark in connection with the sale, distribution, promoting, advertising and marketing of bamboo flooring, bamboo plywood and bamboo paneling." (Answer to applicant's Interrogatory No. 4.) In particular, opposer has continuously used such mark in connection with the sale of bamboo flooring since early 1994. Opposer, in fact, is the owner of a registration in Canada for the mark "PLYBOO" for goods identified as "bamboo flooring"[7] and filed an application to register such mark for the same goods in the United States.[8] However, opposer abandoned its application when registration of the mark on the Principal Register was refused on the ground of mere descriptiveness.

---

[6] See, e.g., DeWalt, Inc. v. Magna Power Tool Corp., 289 F.2d 656, 129 USPQ 275, 280 (CCPA 1961); Astra Pharmaceutical Products, Inc. v. Pharmaton, S. A., 345 F.2d 189, 145 USPQ 461, 464 (CCPA 1965); No Nonsense Fashions, Inc. v. Consolidated Foods Corp., 226 USPQ 502, 504 (TTAB 1985); Binney & Smith Inc. v. Magic Marker Industries, Inc., 222 USPQ 1003, 1010 (TTAB 1984); and C.R. Bard, Inc. v. Willy Rusch K.G., 172 USPQ 250, 251 (TTAB 1971).

[7] Canadian Reg. No. 481,617, issued on August 26, 1997 from an application filed on July 24, 1996, and which claims use in Canada since March 20, 1996.

[8] Ser. No. 74/612,860, filed on December 19, 1996, based on an asserted intent to use.

4

In her testimony on behalf of opposer, Dr. Moody stated that a "descriptive word" is "a word [which,] for a community of speakers, suggests something about the attributes, the characteristics, or the make-up or ingredients of whatever it is that it's describing" and that such a word "certainly may be" different from a brand name or trademark. (Moody dep. at 7.) With respect to her view as to the descriptiveness of the term "plyboo," Dr. Moody testified on direct examination that:

> Q And in your opinion, is plyboo a descriptive word?
>
> A Yes, I think it is.
>
> Q And can you explain that, please?
>
> A Well, ... I think that plyboo is an interesting word, because it ... shows how the language does its stuff over time. It's ... what I would call a blend word, being made up of plywood and bamboo.

(Id. at 8.) Elaborating thereon, she indicated that:

> A [W]hat's happened is that we have a word that's been in the language since 1907, plywood, and we have a natural product growing, bamboo; and plywood and bamboo put together will almost inevitably, I think, become a blend when you take ply and some portion of the bamboo part, put them together and make a new word from it.
>
> Q So is it your opinion that the word plyboo is a blend word and a descriptive word?
>
> A Mm-hmm, that is my opinion.

(Id. at 9.)

Dr. Moody further indicated that the term "PLYBOO" is currently being used by some portions of the public to describe a product made up of plywood and bamboo. She based such testimony

5

primarily upon her investigation and review of just five articles from newspapers, magazines and trade journals,[9] and her telephone interviews with at most two or three contractors. In particular, as to the meaning in the trade of the term "plyboo," she stated that "the contractors that I've spoken with know of it ... as a product ... made of plies of bamboo, [which] can be a laminate, a thinner sort of product, or can be used for flooring." (Id. at 10.) With respect to the articles which mention such term, she testified that:

> Q     And how is the word plyboo used in these articles?
>
> A     It's used as a descriptive term to describe a product that is made out of plies of bamboo that are glued together under ... high pressure to create a very durable, very strong kind of product.
>
> Q     In any of these articles, Doctor, is plyboo used as a trademark or brand name?
>
> A     No it's not.

(Id. at 11.)

The articles referred to by Dr. Moody, however, actually show that the term "plyboo" is used either in instances which evidence trademark usage or in cases which demonstrate the ultimate in mere descriptiveness, namely, genericness. Examples of trademark usage, as well as references to either applicant or

---

[9] We note, however, that opposer's Exhibit 4 curiously contains a "Nexis" copy of an October 22, 1995 Chicago Tribune article, about which Dr. Moody did not testify or otherwise even mention, in addition to a "Nexis" copy of an April 4, 1996 Washington Post article, about which she did present testimony. Applicant introduced an actual copy of the former, including an accompanying photograph, as Exhibit 16 to its notice of reliance.

opposer in some instances, are illustrated by the following

excerpts (**emphasis added**):

>"**Plyboo** is:
>1.  A rare shrub found only in the Australian outback
>2.  A horror-genre BBS on the Internet
>3.  A cross between 'plywood' and 'bamboo'
>
>Yes, it's No. 3.  **Plyboo** is more than just a funny name, however.  It's a laminated flooring made of two thin layers of bamboo, an attractive new product made from a fast growing renewable resource.  ....
>....
>There are several new environmentally sound choices in hardwood flooring, including **Plyboo** and a laminated ecotimber brand hardwood flooring from Mexico that is being imported by EcoTimber." -- <u>San Francisco Examiner</u>, January 18, 1995 (article headlined in part:  "SMART WOOD");

>"Now there's another answer:  bamboo.  Smith & Fong, a California-based company, has developed a tongue-and-groove flooring product made from bamboo.  Called **Plyboo** ($ 5 per sq. ft.), the flooring is attractive, wears well and can be sanded and refinished.
>....
>You can install **Plyboo** just as you would any tongue-and-groove solidwood flooring; a nail gun is recommended.  ...." -- <u>Home Mechanix</u>, July 1995; and

>"Hardwood floor from bamboo[.]  Made of strips cut from the stem, **Plyboo** flooring displays the node pattern characteristic of fast-growing bamboo.  Botanically a grass, bamboo is nevertheless very hard ....  Developed by Dutch, German and Chinese forestry scientists, **Plyboo** consists of three veneer layers laminated into ... boards. ....  Plyboo America, Inc., Kirkville, N.Y." -- <u>Architectural Record, September 1996.</u>

In two other cases, however, the term "plyboo" is used

generically, as set forth below, to designate or describe various

categories or types of products, including laminated material and

flooring (**emphasis added**):

> "After looking at a **plyboo** floor, it's easy to see why Dan Smith was attracted to the possibilities inherent in bamboo. **Plyboo** is a light-colored, highly linear flooring ....
>
> Smith became interested in bamboo products while visiting Asia some years ago. He went to Taiwan ...and eventually tracked down the technology for manufacturing **plyboo**, which was developed in the People's Republic of China over a 12-year period.
>
> Smith started out by putting together a gift line of **plyboo** products, such as small decorative boxes .... With his eye on an entire line of architectural **plyboo** products, he spent a year researching the flooring market.
>
> The end result is **plyboo** flooring, a nail-down, tongue-and-groove plank product that is installed like other hardwood flooring. .... Locally, Golden State Flooring in South San Francisco distributes **plyboo**.
>
> Although the technology was developed in China, Smith says **plyboo** is as new a product in China as it is here.
>
> **Plyboo** products under development include a ... laminated material that can be used for countertops, cabinetry or shelving, and a thinner **plyboo** wall paneling.
>
> Smith reports that the bamboo used in **plyboo** is grown on managed forests in China ... and then carried out of the forest to trucks. ...." -- <u>San Francisco Examiner</u>, January 18, 1995 (article, which refers to applicant, "Smith & Fong Co.," and states "SEE ALSO MAIN STORY (SMART WOOD)," is headlined: "**Plyboo** developed in China"); and

> "When it comes to hardwood flooring, red oak has been the nation's board of choice. Now, an exotic import from China called **plyboo** aspires to compete for a place in American homes.
>
> The material, made of Chinese-grown bamboo that is harder than most hardwood floors ... was introduced in the U.S. market

a year ago by Smith and Fong Co., a San
Francisco-based importer. ....
....
The product is environmentally friendly,
the company says, because bamboo is a grass,
not a tree, and does not have to be replanted
when cut. .... [Company president Daniel]
Smith adds that the bamboo used to make
**plyboo** is grown in managed forests in China,
so there is no impact on wild stands used by
pandas as food.
'The bamboo is harvested on a four-year
cycle,' Smith says, 'meaning you can cut 25
percent of your forest each year.' If the
farmers gather beyond that 25 percent, they
get into areas that have not had a full four
years to regrow, so the shoots are not thick
enough to make **plyboo**. ....
Bamboo stalks are cut into strips that
are milled flat and then laminated into
tongue-and-groove planks. .... **Plyboo** can
be sanded, finished and maintained in the
same way as any other hardwood flooring." --
Washington Post, April 4, 1996.

On cross-examination, Dr. Moody acknowledged that, not
only had she never previously given testimony in a trademark
proceeding, but she did not know either what an inherently
distinctive mark is or what a suggestive mark is. Although
indicating that to her a "[d]escriptive word ... has to do with
attributes of the thing or ingredients of the thing," she
admitted that she did not purport to be an expert either in
trademark law or with respect to the different legal standards
used to categorize marks. (Moody dep. at 16.) She affirmed,
instead, that the sole background for her testimony as to the
descriptiveness of the term "plyboo" was her linguistics
expertise as to the roots of words and how words are formed. She
also reiterated that the "basis for my saying that plyboo is

9

descriptive is that I'm assuming that it comes from plywood and bamboo and that it's a blend word." (Id. at 26.)

Dr. Moody further testified that her opinion as to the descriptiveness of the term "plyboo" was not altered by the fact that it appears that counsel for opposer sent a letter, captioned "Notice of PLYBOO Trademark Infringement" and dated "August 31, 1995," to the San Francisco Examiner newspaper demanding publication of a correction notice and stating, among other things, that:

> This letter is in reference to your article, "Plyboo Developed in China," which was part of the feature story entitled "Smart Wood" in the January 18, 1995 issue of the San Francisco Examiner. The article was just brought to our attention; hence, the delay in writing to you.
> We represent Plyboo America, Inc. and have been asked to advise you that the term PLYBOO is a trademark of Plyboo America, Inc.; it is not a generic term for bamboo flooring, as your article would lead a reader to believe. We have already advised Smith & Fong that it unlawfully infringes our client's trademark each and every time that it refers to its bamboo flooring material as PLYBOO, and that our client intends vigorously to defend its rights in that trademark. We thought that you, too, should be aware of the improper and unauthorized references to PLYBOO that appeared in your article in connection with competing flooring materials that are not genuine PLYBOO brand bamboo flooring.
> For your reference, Plyboo America, Inc. is the sole and exclusive United States licensee of PLYBOO brand flooring. Plyboo America, Inc.'s licensor, Bamboe Informatiecentrum Nederland, B.V., originated the mark PLYBOO and holds international rights to its use. As part of its exclusive United States license, Plyboo America, Inc. was granted the right to register the trademark PLYBOO with the United States Patent and Trademark Office. A trademark

10

registration application has been filed with that office and is currently pending approval.

(Moody dep. Ex. 6.) In particular, despite seeing the further statement on the second page of such letter that "PLYBOO is a trademark owned by Plyboo America, Inc. and not a generic term for bamboo flooring," Dr. Moody testified that it did not change her opinion that "plyboo" is a descriptive word. (<u>Id</u>.)

Likewise, when shown a copy of a letter, dated December 1, 1995, from the <u>San Francisco Examiner</u> to opposer's counsel stating that, in reply to "[y]our letter of August 31, 1995 ..., the Examiner printed a correction on October 4" (Moody dep. Ex. 7) and a "Nexis" copy of such correction, which is headlined "PLYBOO a trademark" (Moody dep. Ex. 8) and is set forth below, she testified that the existence thereof did not change her opinion regarding the descriptiveness of the term "plyboo":

> "PLYBOO is a trademark owned by Plyboo American [sic] Inc. and is not a generic term for bamboo flooring, as may have been inadvertently suggested in a Jan. 18 Habitat [section] package of stories on 'Smart Wood.' The Examiner regrets the error." -- <u>San Francisco Examiner</u>, October 4, 1995.

Dr. Moody steadfastly maintained her opinion even when shown a copy of a brochure by opposer, entitled "PLYBOO® tomorrow's timber," which advertises "PLYBOO®" "*Bambooflooring and Environmentally Friendly Bamboo Building Materials*" offered by "PLYBOO® AMERICA, INC." (Moody dep. Ex. 9.) Specifically, while conceding that she knows that the symbol "®" signifies "[r]egistered," which means "[i]t's probably a trademark," when such symbol is used in association with the term "plyboo," Dr.

Moody insisted that the manner of use shown in opposer's own brochure did not change her opinion with respect to the term "plyboo" being descriptive. (Moody dep. at 30.) She continued to base her conclusion, instead, primarily on her training as an English professor, her investigation and review of only five articles from newspapers, magazines and trade journals, and her telephone discussions with just two or three contractors.

On the other hand, the vast majority of the evidence furnished by applicant during its testimony period shows either clear usage of "PLYBOO" in a trademark manner or, in some cases, at least arguably so.[10] The first page of applicant's website at http://www.plyboo.com, for example, plainly refers in a trademark manner to "Genuine Plyboo® Flooring" by "Smith & Fong Company". (Applicant's Ex. 2.) Similarly, in addition to the trademark use

---

[10] While, of course, each case must be considered on its own merits, applicant also submitted, as part of its case-in-chief, copies of six third-party registrations for the following marks and associated goods: "POLYPLY" for "construction panels comprised of a plywood substrate overlaid with textured and/or smooth plastic sheeting"; "PLY-TRIM" for "plywood trim products in the form of narrow boards for buildings such as homes"; "PLY-JOIST" for "composite wooden construction joists"; "COM-PLY" for "particle and composite boards including at least one wood veneer face or ply"; "PLYCEM" and design for "cement building panels"; and "PLY-BRIK" for "veneer facades for exterior and interior walls and chimneys". Of these registrations, all issued on the Principal Register, but only the one for the "PLY-TRIM" mark registered pursuant to the provisions of Section 2(f) of the Trademark Act due, apparently, to the mark's initially being considered to be merely descriptive of "plywood trim products in the form of narrow boards for buildings such as homes". However, while Dr. Moody, during her cross-examination, found such mark, unlike the marks "POLYPLY," "COM-PLY" and "PLYCEM," to be "fairly descriptive," she also found the marks "PLY-JOIST" and "PLY-BRIK" to be "fairly descriptive" and "descriptive," respectively, even though the Patent and Trademark Office, after examination, permitted the registration thereof without resort to the provisions of Section 2(f). (Moody dep. at 21-22.)

previously noted in the excerpt from <u>Home Mechanix</u> magazine,[11] the term "plyboo" is clearly used as a trademark for applicant's goods--in that the first letter of such term (like a proper noun or proper adjective) is capitalized, or the term is otherwise set off by quotation marks, *and* the term is followed (or preceded) by generic terminology for the goods--as demonstrated in the following representative examples (**emphasis added**):

> "Wait a minute. Bamboo flooring? Sure, says Dan Smith. .... He and a friend founded Smith and Fong Co. to import it to the United States.
> ....
> *Oriental strand board.* To make the flooring, the hollow stalks are split into long strips .... The strips are laminated together into boards called '**Plyboo**,' which can be sanded and stained like any hardwood. **Plyboo** tongue-and-groove flooring is almost as hard as red oak, and twice as stable, according to Smith." -- <u>Journal of Light Construction</u>, September 1995;

> "***Plyboo** Bamboo Flooring and Plywood*
> In the past two years, Smith & Fong has amassed a fast-growing list of installations of their exclusive ... tongue-and-groove bamboo flooring, *Plyboo*. ...." -- <u>Interior Concerns Newsletter</u>, September/October 1995;

> "The thing about bamboo is that it grows back after it's cut down. ....
> Leave it to a California company, the Smith & Fong Co., to turn that eco-advantage into something salable: **Plyboo**. It's laminated bamboo--and it's being marketed as an alternative to hardwood.
> There is **Plyboo** tongue-and-groove flooring and **Plyboo** bamboo plywood for making custom cabinetry and furniture." -- <u>Chicago Tribune</u>, October 22, 1995 (article, which is headlined "As flooring or furniture, laminated bamboo may be best choice," also

---

[11] Although applicant, unlike opposer, introduced an actual copy of the article rather than a "Nexis" copy, the substantive content is the same in either instance.

includes a picture captioned: "Marketed as an alternative to hardwood, **Plyboo** can be used as beautiful, durable flooring");

"ALL SMILES: Eugene Dickey of the Smith & Fong Co. in San Francisco drew a lot of attention with his **Plyboo** bamboo flooring at the product showcase." -- <u>Floor Covering Weekly</u>, April 25, 1994;

"Responsibly harvested from self-renewing bamboo forests, **Plyboo** tongue-and-groove laminated flooring wears like walnut or teak. Imported by Smith & Fong Co., it is easy to install and stain or finish." -- <u>Home Products Guide</u>, Fall/Winter 1995;

"'**Plyboo**' tongue-and-groove bamboo flooring is a two-ply, parallel laminated flooring .... Installed using glue and nails, **Plyboo** flooring ... can be cleaned like other wood flooring." -- <u>Visual Merchandising & Store Design</u>, February 1996;

".... Smith & Fong, a San Francisco-based company, manufactures flooring and paneling products in China of timber bamboo and distributes them here under the **Plyboo** brand name." -- <u>Metropolitan Home</u>, November/December 1996; and

"FLOORING: **Plyboo** (bamboo flooring), imported by Smith & Fong." -- <u>Sunset</u>, February 1995.

A couple of the articles submitted by applicant, as well as a piece of advertising literature for its bamboo laminate flooring, appear ambiguous, and thus are neutral, in that, due to the manner of capitalization utilized or the placement of the term "plyboo" in quotes, the context in which such term appears is arguably as consistent with descriptive or generic use as it is with trademark use. Specifically, applicant's advertising literature for its "GENUINE PLYBOO FLOORING" states that: "For Information On Plyboo Flooring Contact Smith & Fong Co."

14

(Applicant's Ex. 26.)  The following two excerpts, from trade publications, similarly are indeterminate or equivocal (**emphasis added**):

> "The reason why everyone is asking about bamboo?  Because it's actually not a hardwood at all.  Technically, it's a grass.  As a linearly laminated flooring product, Smith & Fong markets it, and San Francisco's Golden State Flooring distributes it, as '**plyboo**.'" -- Hardwood Floors:  Elements of Design, Spring 1995; and

> "Smith & Fong says the stalks [of bamboo] are ... laminated to make '**plyboo**,' which is cut and milled into tongue-and-groove plank flooring." -- Hardwood Floors, December 1993/January 1994 (article captioned:  "Laminated Bamboo Flooring Available From Smith & Fong").

Moreover, in addition to an actual copy of the same Washington Post article furnished by opposer,[12] a couple of the articles which applicant submitted plainly show generic usage of the term "plyboo," as set forth below (**emphasis added**):

> "T&G plank flooring ....  Also unfinished laminated bamboo plywood (**plyboo**) ...." -- American Bamboo Society Newsletter, December 1993; and

> "A new entry in the eco-flooring field is **plyboo**, a product manufactured in China and imported by Smith and Fong of San Francisco.
> Once you've seen **plyboo**--a light-colored, highly linear flooring with a subtle pattern created by the bamboo plant's nodes--

---

[12] Applicant, notwithstanding the correction notice which was later run, also submitted an actual copy of the same San Francisco Examiner "Plyboo developed in China" article which opposer introduced through Dr. Moody's testimony.  Such exhibit, except for an accompanying picture of laminated bamboo flooring, is essentially duplicative because, once evidence is properly of record, it can be relied upon by any party--and not just the party who introduced it--for any proper purpose.

you can see why Dan Smith was attracted to
the potential of laminated bamboo.
Smith became interested in bamboo
products while visiting Asia several years
ago. He went to Taiwan to research the
subject and eventually found the technology
for manufacturing **plyboo**, which was developed
in the People's Republic of China over a 12-
year period.
Smith's first commercial use of bamboo
was a gift line of small, decorative **plyboo**
boxes. With his eye on [a] wider line of
**plyboo** products, he spend a year researching
the flooring market.
The result is **plyboo** flooring, a nail-
down, tongue-and-groove plank product that is
installed like other hardwood flooring. ....
**Plyboo** products under development
include a ... laminated material that can be
used for countertops, cabinetry or shelving,
and a thinner **plyboo** wall paneling.
Smith reports that the bamboo used in
**plyboo** is grown on managed forests in China
...." -- <u>San Jose Mercury News</u>, August 26,
1995 (article also indicates that: "Sources
of **plyboo** include Smith & Fong ... and Golden
State Flooring ....").

Opposer, nominally in rebuttal, submitted copies of

several articles from printed publications.[13] While the two

articles duplicative of those which were already in the record

have been previously discussed, the three additional articles

contain references to the term "plyboo" in which the first letter

thereof, as is often the case for properly indicating trademark

significance, is capitalized. In two of such articles, the term

"Plyboo" is also used in conjunction with terminology which is

generic for the subject goods, while in the other it appears in

quotes, which is another commonly utilized indication of

---

[13] Although the evidence properly forms part of opposer's case-in-chief
rather than rebuttal, because applicant has not objected on such
ground, we have considered the evidence as if it had been introduced
during opposer's initial testimony period.

16

trademark status, but without any accompanying generic

terminology in reference thereto.  Such uses, which are

reproduced in relevant part below, thus arguably evidence, in the

first two instances set forth, use of the term "Plyboo" in a

trademark manner rather than in a merely descriptive or generic

fashion, while the other use is, in context, simply ambiguous

(**emphasis added**):

> "A grass, not a wood, it's called **Plyboo** because it's a two-ply laminated product.
> ....
> ....
> The unique yet subtle knuckling pattern gives the flooring an Oriental feel.  **Plyboo** can be purchased pre-stained or ... laid unfinished for a custom stain." -- <u>Portland Oregonian</u>, August 18, 1996;

> "Sanders Trading Co. on Oahu sells an environmentally conscious product made in China--bamboo flooring called **Plyboo**." -- <u>Pacific Business News - Honolulu</u>, October 27, 1997; and

> "At present, bamboo poles are used for building scaffoldings, laminated floor and wall tiles.  "**Plyboo**" is being developed by the Department of Science and Technology and is about to come out into the local market." -- <u>Business Daily</u>, July 16, 1997; and

It is well settled that a mark is considered to be

merely descriptive of goods or services, within the meaning of

Section 2(e)(1) of the Trademark Act, if it immediately describes

an ingredient, quality, characteristic or feature thereof or if

it directly conveys information regarding the nature, function,

purpose or use of the goods or services.  <u>See</u> In re Abcor

Development Corp., 588 F.2d 811, 200 USPQ 215, 217-18 (CCPA

1978).  It is not necessary that a mark describe all of the properties or functions of the goods or services in order for it to be considered to be merely descriptive thereof; rather, it is sufficient if the mark describes a significant attribute or aspect about them.  Moreover, whether a mark is merely descriptive is determined not in the abstract but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services and the possible significance that the mark would have to the average purchaser of the goods or services because of the manner of its use.  See In re Bright-Crest, Ltd., 204 USPQ 591, 593 (TTAB 1979).  Consequently, "[w]hether consumers could guess what the product [or service] is from consideration of the mark alone is not the test."  In re American Greetings Corp., 226 USPQ 365, 366 (TTAB 1985).

On the other hand, a mark is suggestive if, when the goods or services are encountered under the mark, a multistage reasoning process, or the utilization of imagination, thought or perception, is required in order to determine what attributes of the goods or services the mark indicates.  See, e.g., In re Abcor Development Corp., supra at 218, and In re Mayer-Beaton Corp., 223 USPQ 1347, 1349 (TTAB 1984).  As has often been stated, there is a thin line of demarcation between a suggestive mark and a merely descriptive one, with the determination of which category a mark falls into frequently being a difficult matter involving a good measure of subjective judgment.  See, e.g., In re Atavio, 25 USPQ2d 1361 (TTAB 1992) and In re TMS Corp. of the Americas, 200

18

USPQ 57, 58 (TTAB 1978). The distinction, furthermore, is often made on an intuitive basis rather than as a result of precisely logical analysis susceptible of articulation. See In re George Weston Ltd., 228 USPQ 57, 58 (TTAB 1985).

It is also well established, and the parties correctly so agree in their briefs, that where the issue is mere descriptiveness, "the challenger's burden of proof in [an] ... opposition ... is a preponderance of the evidence. 2 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 20.16 (3d ed. 1992)."[14] Eastman Kodak Co. v. Bell & Howell Document Management Products Co., 994 F.2d 1569, 26 USPQ2d 1912, 1918 (Fed. Cir. 1993). See also Yamaha International Corp. v. Hoshino Gakki Co. Ltd., 840 F.2d 1572, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988) ["an opposer's burden of establishing no inherent distinctiveness, or of showing that the mark is 'merely descriptive' under Section 2(e), exists ... where an applicant seeks registration on the basis of inherent distinctiveness"]. In the present case, we agree with applicant that opposer has failed to meet its burden of proof that the mark "PLYBOO" is merely descriptive of "bamboo laminate flooring and plywood made of bamboo" inasmuch as it has failed to present "evidence sufficient to establish that the mark has any descriptive meaning in the industry or [to] the relevant consuming public."

---

[14] Applicant, for instance, states in its brief that, "[t]o sustain the instant Opposition, Opposer must demonstrate by *a preponderance of the evidence* that the coined term PLYBOO has a descriptive meaning to the relevant consuming public," while opposer asserts, in the conclusion to its reply brief, that it "has established by *a preponderance of the evidence* that plyboo is a merely descriptive word and not an indicator of source" (*emphasis added*).

Opposer strongly relies on the testimony of Dr. Moody as substantiating its contention that the term "plyboo" merely describes applicant's goods. In particular, opposer points out that, "[i]n her expert opinion, based upon her extensive education, academic specialization, experience and research into the industry, Dr. Moody testified that the word plyboo is a blend word and a descriptive word." Opposer also insists that because applicant "did not introduce any expert testimony to counter Dr. Moody's testimony, ... it should be given serious consideration in this Opposition proceeding."

We note, however, that the opinion of an asserted expert in linguistics is simply not dispositive since, as stated in Tanners' Council of America, Inc. v. Scott Paper Co., 185 USPQ 630, 637 (TTAB 1975):

> [I]t is well established that the expressions of opinion by witnesses, including persons considered to be experts in a particular field on any question before the Board, is not binding upon the Board for "if such testimony were adopted without considering other aspects of the case, the effect would be to substitute the opinion of the witnesses for the ultimate decision to be reached by the Court and would therefore be improper." The Quaker Oats Company v. St. Joe Processing Company, Inc., [232 F.2d 653,] 109 USPQ 390 at 391 (CCPA, 1956) ....

See also Ferro Corp. v. Nicofibers, Inc., 196 USPQ 41, 45 (TTAB 1977) [purchasers' "understanding of the marks must be determined in light of the relevant purchasing sector and not that of linguistic experts or those familiar with the meaning or derivation of words"]. Consequently, the opinion offered by Dr. Moody as to the descriptiveness of "plyboo" as a "blend word," as

20

opposed to any testimony as to factual matters within her area of linguistic expertise or personal knowledge, is essentially of no probative value in this case. <u>See</u> Mennen Co. v. Yamanouchi Pharmaceutical Co., Ltd., 203 USPQ 302, 305 (TTAB 1979) at n. 4.

Aside therefrom, we concur with applicant that Dr. Moody's testimony concerning her opinion with respect to the descriptiveness of the mark "PLYBOO" is essentially useless for several other reasons. Dr. Moody admitted that she was not an expert in trademark law (this being the first trademark proceeding in which she has testified), nor did she know of the different legal standards used to categorize marks. She also testified that she did not know either what an inherently distinctive mark is or what a suggestive mark is. Instead, the basis for her view that the term "plyboo" is descriptive is her assumption that the term is derived from a combination or blend of portions of the words "plywood" and "bamboo". Suggestive marks, however, can also be formed in the same manner[15] and Dr. Moody's ability to ascertain that the mark "PLYBOO" is a blend taken from elements of the words "plywood" and "bamboo" does not establish that consumers would understand such mark as merely describing, for instance, a product class or category. Nor is there anything in her testimony or the rest of the record which indicates that the trade or members of the purchasing public regard the terms "ply" and "boo" as respectively being synonymous

---

[15] <u>See</u>, <u>e.g.</u>, the marks (set forth previously in footnote 10) which are the subjects of five of the six third-party registrations introduced by applicant and which issued on the Principal Register without resort to the provisions of Section 2(f) of the Trademark Act.

with or otherwise describing--as opposed to suggesting--the words "plywood" and "bamboo". Her opinion, which she essentially formed by reading only certain articles and by talking to no more than two or three contractors of unspecified occupations, cannot therefore be found to be credible evidence of trade or consumer perception, especially when confronted with contrary evidence which plainly shows the terms "PLYBOO" or "Plyboo" utilized in a trademark manner as an indication of source for bamboo laminate flooring and plywood made of bamboo.

The only other evidence in this case consists of articles and advertising. As applicant correctly points out, and opposer agrees, "[e]xcerpts from [newspapers,] industry journals and magazines may be considered probative evidence of the meaning a term may have in the marketplace." See, e.g., In re Medical Disposables Co., 25 USPQ2d 1801, 1804 (TTAB 1992). The same is true of brochures and other forms of advertising wherein a term is used. Here, the majority of the articles of record, and most of the parties' advertising, clearly demonstrate that the term "plyboo" is viewed by the trade and the consuming public as a source indicator rather than a merely descriptive term of art or generic designation. Such articles and promotional materials plainly utilize the terms "PLYBOO" or "Plyboo" in a trademark manner, that is, as a mark which is associated with and identifies the origin of laminated bamboo flooring, plywood and other products marketed by applicant or, in a few instances, opposer. By contrast, only a distinct minority of the articles

either show the term "plyboo" used in a merely descriptive fashion as the generic name for the parties' goods or are simply indeterminate, as is the case with but a single piece of applicant's product literature. Moreover, one of those articles was in fact subsequently "corrected," at opposer's insistence, to indicate that the term "PLYBOO is a trademark ... and is not a generic term for bamboo flooring". (Moody dep. Ex. 8.)

Applicant, with respect to such action and others by opposer, strenuously maintains that:

> The instant Opposition is a poorly disguised attempt to continue using in a trademark sense a term that Opposer is now claiming is merely descriptive. Yet the record is clear that Applicant's coined mark is not a term of art in the industry and has not been shown to possess a merely descriptive or generic meaning to the consuming public. That Opposer ... [has] sought and[/or] obtained registrations for PLYBOO in [the United States and] Canada ... confirms that ... Opposer and those in the industry do not view PLYBOO as a term of art either. ....

Opposer, notably without citation to any authority, contends in reply that its "efforts to market plyboo products and to discourage competitors from using the word plyboo are not relevant to the registrability of the mark." We find, however, that its assertions of trademark rights in the term "plyboo," as evidenced for instance by its attempting to register such mark in the United States and its obtaining a correction notice with respect to an article in the San Francisco Examiner which used the mark generically, are relevant with respect to the issue of mere descriptiveness. Specifically, opposer's prior inconsistent

23

positions may properly be considered as "illuminative of shade and tone in the total picture" confronting the trier of fact, and thus are some evidence that "PLYBOO" is a trademark instead of a merely descriptive term, even though such actions do not, of course, "relieve the decision maker of the burden of reaching his [or her] own ultimate conclusion on the entire record." Interstate Brands Corp. v. Celestial Seasonings, Inc., 576 F.2d 926, 198 USPQ 151, 154 (CCPA 1978) [prior contrary opinion by a party is a fact which is admissible but not binding].

Accordingly, because the evidence of record, when viewed as a whole, fails to establish that members of the trade or purchasing public would regard the mark "PLYBOO" as a merely descriptive, let alone a generic, designation for bamboo laminate flooring and plywood made of bamboo, opposer has not proven its case and the opposition must be dismissed. See, e.g., Levi Strauss & Co. v. R. Josephs Sportswear Inc., 28 USPQ2d 1464, 1471 (TTAB 1993), recon. denied, 36 USPQ2d 1328, 1330 (TTAB 1994) [opposer's burden of showing that mark "ACTION SLACKS" for pants and shorts is merely descriptive and/or generic not met since, despite some evidence showing sporadic descriptive uses thereof, vast majority of uses of term "Action Slacks" were ambiguous as to whether they were trademark uses or descriptive uses and some evidence clearly showed such term was used and recognized as trademark].

**Decision**:  The opposition is dismissed.

E. J. Seeherman

24

G. D. Hohein

D. E. Bucher
Administrative Trademark Judges,
Trademark Trial and Appeal Board